Filed 8/4/16  In re Ana G. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re Ana G. et al., Persons Coming Under the Juvenile Court Law. | B267869 (Los Angeles County Super. Ct. No. DK11710) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. EVELYN L., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County. Stephen C. Marpet, Commissioner.  Affirmed.

Cristina Gabrielidis, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, R. Keith Davis, Acting Assistant County Counsel, and Stephen D. Watson, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for Minors.

* * * * * *

In this juvenile dependency case, the juvenile court asserted jurisdiction over Evelyn L.'s (mother's) four children, removed all four children from her custody, and issued an exit order granting sole legal and physical custody of the eldest two children to their father. On appeal, mother assails each of these rulings. We conclude there was no error, and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother has four children. She has two children with Enrique G. (Enrique)—namely, Ana (born 2000) and Sylvester (born 2002). She also has two children with Efrain D. (Efrain)—namely, Sandy (born 2005) and Danny (born 2007). Mother and Enrique fought before they broke up; Enrique was convicted of misdemeanor spousal battery in 2001. When they were together, mother and Efrain yelled at each other, threw objects at each other, and occasionally came to blows; Efrain was convicted of misdemeanor domestic violence in 2008.

Sometime prior to March 2012, mother went to Oregon and left all four children with Efrain. Mother admits she does not have stable housing in Oregon. Since her departure, Efrain has (1) repeatedly beat Sylvester with a belt and a boot and has punched him in the head and the face, (2) repeatedly hit Sandy with a belt, and (3) hit Danny. According to all four children, mother knew about these beatings; mother acknowledged that she knew Efrain was hitting Sylvester with a belt. When mother would occasionally come back into town, she and Efrain would verbally argue, mother would sometimes counsel Efrain not to administer such beatings and/or would take the children for a few days, but she would always return them to Efrain before returning to Oregon. Ana characterized mother's conduct as "very neglectful." During a visit in May or June 2014, mother became upset with Ana and struck her across the face.

When Sylvester reported one of the beatings to personnel at his school in May 2015, the Los Angeles Department of Children and Family Services (Department) filed a petition asking the juvenile court to assert dependency jurisdiction over all four children because (1) Efrain beat Sylvester, and mother failed to protect him or the other children

2

(in violation of Welfare and Institutions Code section 300, subdivisions (b) and (j));[1] (2) Efrain hit Sandy and mother did not protect her or the other children (in violation of section 300, subdivisions (a), (b), and (j)); (3) Efrain has a history of substance and alcohol abuse that places the children at substantial risk of serious physical harm (in violation of section 300, subdivision (b)); (4) Efrain and mother have a history of domestic violence that places the children at substantial risk of serious physical harm (in violation of section 300, subdivision (b)); and (5) mother struck Ana and thereby placed Ana and the other children at substantial risk of serious physical harm (in violation of section 300, subdivision (b)). The juvenile court sustained each of these allegations.[2]

After finding jurisdiction, the court proceeded immediately to the dispositional hearing. The court removed all four children from mother. With respect to Ana and Sylvester, the court then immediately terminated dependency jurisdiction and issued an order granting sole legal and physical custody to their father Enrique pursuant to sections 361.2, subdivision (b) and 362.4. With respect to Sandy and Danny, the court ordered family reunification services and set the matter for a progress report hearing.

Mother timely appeals. Efrain did not.

## DISCUSSION

### I. Justiciability

The Department argues that we need not consider the merits of mother's appeal because the juvenile court's dependency jurisdiction over all four children independently rests on its findings regarding Efrain's abuse or neglect, rendering any ruling we make on appeal ineffectual.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] The juvenile court did not sustain the Department's further allegations that mother's history of domestic violence with Efrain and her slap to Ana's face violated section 300, subdivision (a).

3

We are unpersuaded. As to Enrique's two children (Ana and Sylvester), the Department's argument is incorrect. That is because Efrain is neither their parent nor legal guardian (§ 300 [conferring jurisdiction due to abuse or neglect by a "parent" or "guardian," which is defined as a "legal guardian"]), so jurisdiction over Ana and Sylvester exists due solely to the findings against mother. As to Efrain's two children (Sandy and Danny), the findings against Efrain independently support jurisdiction. (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1491-1492; *In re Briana V.* (2015) 236 Cal.App.4th 297, 308.) However, we may still evaluate the juvenile court's findings as to mother if those findings "serve[] as the basis for dispositional orders that are also challenged on appeal" or "could potentially impact the current or future dependency proceedings." (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762-763.) In light of the challenges mother raises on appeal, we will exercise our discretion to reach the merits of mother's appeal.

## II.     Jurisdiction

A juvenile court may assert dependency jurisdiction over a child if, among other things, "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm . . . , as a result of the failure or inability of his or her parent . . . to . . . protect the child from the conduct of the custodian with whom the child has been left." (§ 300, subd. (b)(1).) Put differently, the court must find "(1) neglectful conduct . . . by a parent [in the above-specified form], (2) causation, and (3) serious physical harm to the child, or a substantial risk of such harm." (*In re Rebecca C.* (2014) 228 Cal.App.4th 720, 724-725.) We review a juvenile court's jurisdictional findings for substantial evidence, viewing the evidence presented in the light most favorable to the court's findings and asking whether those findings, so viewed, are supported by evidence that is "'"'"reasonable, credible, and of solid value.'"'"'" (*In re F.S.* (2016) 243 Cal.App.4th 799, 811-812 (*In re F.S.*); *In re Lana S.* (2012) 207 Cal.App.4th 94, 103.) Where, as here, the juvenile court's dependency jurisdiction rests on multiple grounds, "'a reviewing court can affirm the juvenile court's finding of jurisdiction over

4

the minor[s] if any one of the statutory bases for jurisdiction . . . is supported by substantial evidence, [and] . . . need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.' [Citation.]" (*In re I.J.* (2013) 56 Cal.4th 766, 773-774.)

Mother attacks the juvenile court's findings that (1) she failed to protect the children *while knowing of Efrain's abuse of them*, (2) her domestic violence with Efrain in 2008 currently poses a substantial risk of serious physical harm to the children, and (3) her slap to Ana's face in 2014 currently poses a substantial risk of serious physical harm to the children.

With respect to the first finding, we need not decide as a legal matter whether mother must have subjectively appreciated the substantial risk of serious physical harm to the children before jurisdiction would be appropriate for "fail[ing] . . . to . . . protect" them "from the conduct of the custodian with whom the child has been left" (§ 300, subd. (b)(1)) because there is substantial—and, frankly, overwhelming—evidence to support the finding that she subjectively knew Efrain was a danger to her children. All four kids said mother was aware of Efrain's physical abuse, and mother admitted she knew that Efrain was beating Sylvester with a belt. She nevertheless did nothing to protect them, returning to Oregon while the abuse continued. Mother makes three arguments in response. First, she says she lacked any knowledge of the abuse, but this ignores the evidence in the record, including her own admission to the contrary. Second, she points out that one of Sylvester's teachers thought Efrain was a "good caretaker," but we must disregard this conflicting evidence when reviewing the substantiality of the evidence. Lastly, she argues that there is no current risk to the children because she does not plan in the future to leave the children with Efrain. Mother presented no evidence on this point, however, and this argument is substantially undermined by the evidence of her longstanding residence in Oregon and her admitted lack of stable housing.

In light of our conclusion that this ground amply supports the trial court's finding of dependency jurisdiction, we need not address mother's attacks on the other grounds.

5

## III.   Removal

In reviewing the juvenile court's order removing all four children from mother, we will apply the standard for removal set forth in section 361.2.  That statute applies when a juvenile court is assessing whether to place a child with the parent "with whom the child was not residing at the time" of the events giving rise to dependency jurisdiction. (§ 361.2, subd. (a).)  It is undisputed that none of the children were "residing" with mother, so section 361.2 would appear to apply.

To be sure, our decision to apply section 361.2 is not beyond debate for two reasons.  First, by its plain terms, section 361.2 applies "[w]hen a court orders removal of a child pursuant to section 361" (§ 361.2, subd. (a)), and section 361 contemplates removal from a parent or guardian "with whom the child resides at the time the [dependency] petition was initiated" (§ 361, subd. (c)).  This prerequisite is met as to Sandy and Danny because they were removed from their father Efrain, with whom they were residing.  But it is not met as to Ana or Sylvester because they were residing with Efrain, who is neither their parent nor guardian.  However, the absence of this prerequisite for Ana or Sylvester would not seem to affect the applicability of section 361.2, which directly governs the question of whether to place a child with the parent with whom they were not residing.  What is more, the only other possible removal standard to apply would be the one contained in section 361, subdivision (c), which, as discussed below, is substantively indistinguishable from section 361.2's standard.

Second, the Court of Appeal has divided over whether to apply section 361.2 when, as is the case here, the parent "with whom the child [is] not residing" is also an "offending parent."  Some courts have held that section 361.2 still applies.  (See, e.g., *In re D'Anthony D.* (2014) 230 Cal.App.4th 292, 299-301 (*In re D'Anthony D.*); *In re Nickolas T.* (2013) 217 Cal.App.4th 1492, 1504-1505; *In re V.F.* (2007) 157 Cal.App.4th 962, 970, superseded by statute on other grounds as stated in *In re B.H.* (2016) 243 Cal.App.4th 729, 737.)  Others have held that courts should instead apply section 361, subdivision (c)'s removal standard.  (See, e.g., *In re A.A.* (2012)

6

203 Cal.App.4th 597, 606-610; *In re John M.* (2013) 217 Cal.App.4th 410, 420-425.)

Fortunately, we need not definitively resolve whether removal in these circumstances is governed by section 361.2 or section 361 because the standards under both are "similar[]" (*In re D'Anthony D.*, *supra*, 230 Cal.App.4th at p. 303): Section 361.2, subdivision (a) looks to whether placement with the parent "would be detrimental to the safety, protection, or physical or emotional well-being of the child," while section 361, subdivision (c)(1) looks to whether placement "would [pose] a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home."

We review the juvenile court's finding that removal is warranted for substantial evidence. (*In re F.S.*, *supra*, 243 Cal.App.4th at pp. 811-812.) The Court of Appeal has also divided over whether, on appeal, we are to evaluate the substantiality of the evidence in light of the clear and convincing burden of proof that that juvenile courts must apply in finding a basis for removal. (Compare *In re J.S.* (2014) 228 Cal.App.4th 1483, 1492-1493 [noting that the "'clear and convincing test disappears'" on appeal] with *In re Noe F.* (2013) 213 Cal.App.4th 358, 367 [noting that appellate court must "keep[] in mind" the higher burden of proof].) This is another issue we need not decide.

No matter which removal statute we apply, and even if we "keep[] in mind" the clear and convincing standard of proof for removal, substantial evidence supports the juvenile court's finding that placing the children with mother would be detrimental, and pose a danger, to their physical and emotional health and well-being, their safety, and their protection. The eldest child, Ana, noted that mother was "very neglectful" and the record bears this out in light of the number of times she left the children with Efrain notwithstanding her awareness that he was beating them. Moreover, mother frankly admitted that she does not have stable housing. For these reasons, the juvenile court had ample evidence upon which to find, by clear and convincing evidence, that placing the children in mother's custody would assuredly pose a risk to their well-being and safety.

7

## IV.    Exit Order

When a juvenile court places a child subject to dependency jurisdiction with a noncustodial, "nonoffending" parent, it may "terminate[] its jurisdiction over" that child and "[o]rder that the parent become legal and physical custodian of the child." (§§ 361.2, subds. (a), (b)(1) & 362.4.) In issuing this so-called "exit order," the juvenile court's goal is to assign legal and physical custody in a manner that serves "the best interests of the child." (*In re Jennifer R.* (1993) 14 Cal.App.4th 704, 712.) Unlike in family law cases, the juvenile court is to issue an exit order specifying custody "without any preferences or presumptions" in favor of joint or sole custody. (*Ibid.*; *In re John W.* (1996) 41 Cal.App.4th 961, 971-972.) We review exit orders for an abuse of discretion. (See *In re Maya L.* (2014) 232 Cal.App.4th 81, 102.)

We conclude that the juvenile court did not abuse its discretion in awarding Enrique sole physical and legal custody of Ana and Sylvester. The children had been placed with Enrique during the pendency of these dependency proceedings without incident, and both children reported that they wanted to be placed with Enrique. Mother raises two objections to the trial court's ruling. First, she argues that Enrique was unfit to have custody because he engaged in domestic violence with her in 2001. This is true, but in the ensuing 15 years, Enrique had not been involved in any further domestic violence incidents. Second, mother contends that Enrique had not been involved in Ana or Sylvester's lives during much of the time they were living with her and/or Efrain. This is also true, but is due to the fact that mother prevented Enrique from having any contact with them. Thus, the absence of contact can hardly be blamed on Enrique.

8

**DISPOSITION**

The order of the juvenile court is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.</u>

_____, J.

HOFFSTADT

We concur:


_____, P.J.

BOREN


_____, J.

ASHMANN-GERST

9