Filed 1/6/16

CERTIFIED FOR PARTIAL PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re B.H., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E063278 |
| Plaintiff and Respondent, | (Super.Ct.No. J258251) |
| v. | OPINION |
| B.H., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County. Lynn M. Poncin, Judge. Affirmed.

Seth F. Gorman, under appointment by the Court of Appeal, for Defendant and Appellant.

---

Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II A.

1

Jean-Rene Basle, County Counsel, and Dawn M. Messer, Deputy County Counsel, for Plaintiff and Respondent.

At two years old, B.H. (the child) was removed from the custody of his parents, B.H. (Father) and K.E. (Mother).[1]  After a jurisdictional hearing, the juvenile court found true the allegations under Welfare and Institutions Code[2] section 300, subdivisions (b) (failure to protect), (g) (no provision for support), and (j) (abuse of sibling), and declared the child a dependent of the court.  The court thereafter denied Father reunification services under the bypass provision of section 361.5, subdivision (b)(10).  Father subsequently appealed, claiming there was insufficient evidence to support the jurisdictional findings against him and that there was insufficient evidence to support the denial of reunification services under section 361.5, subdivision (b)(10).  We reject these contentions and affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

The child was detained on January 10, 2015, after Mother was arrested for credit card fraud and child endangerment, and her home was found in a deplorable and unsafe condition with methamphetamine scales in the living room and kitchen.  Father was incarcerated at the time and had a lengthy criminal history for serious and violent acts.  A

---

[1]  Mother is not a party to this appeal.

[2]  All future statutory references are to the Welfare and Institutions Code unless otherwise stated.

2

deputy reported that Father was a drug dealer, while the paternal grandmother added that he was a drug user. Mother admitted to having a drug problem and smoking methamphetamine for the last two years. She also admitted to having previously quit smoking crack cocaine mixed with marijuana in 2005.

On January 13, 2015, the San Bernardino County Children and Family Services (CFS) filed a petition on behalf of the child pursuant to section 300, subdivisions (b) (failure to protect) and (g) (no provision for support). The petition was later amended on February 3, 2015, to include an allegation under section 300, subdivision (j) (abuse of sibling). The amended petition alleged that Mother and Father suffered from substance abuse which prevented them from providing safe and adequate care to the child (b-1 and b-2, respectively); that Father engaged in a pattern of criminal behavior which placed the child at risk for severe physical harm (b-3); that Father was incarcerated and unable to provide care and support for the child (g-4); and that the child's half sibling was removed from Father's care, Father failed to reunify with the child's half sibling, and Father's services were terminated (j-5).

The detention hearing was held on January 14, 2015. At that time, Father was in state custody and not present, but his attorney appeared on his behalf.[3] The court found a

_____

[3] Father's counsel acknowledged receipt of the petition, waived further reading and advisal of rights, entered a denial at that time, submitted on detention, and joined in Mother's request to place the child with the paternal grandmother. Father's counsel also stated that he had "dealt with" Father; that he did not know if Father would want to be transported for the jurisdiction/disposition hearing; and that Father was expected to be released in February 2015. The juvenile court noted, "He [Father] probably wouldn't

*[footnote continued on next page]*

3

prima facie showing was made that the child came within section 300.  The court

detained the child and placed him in a suitable relative or foster home.

The paternal grandmother requested that the child be placed with her, but CFS

could not certify the paternal grandmother for emergency placement due to a 2006 petty

theft charge.  CFS, however, continued to assess the paternal grandmother for placement

of the child.  The paternal grandmother denied having a criminal history, and CFS

believed that it was possible another person had used her name as an alias.  The paternal

grandmother lived in a one-bedroom apartment with her 12-year-old son and one-year-

old granddaughter, and planned on moving into a bigger home in February 2015.  She

desired placement of the child while the parents " 'get their act together.' "  The paternal

grandmother had been assessed for placement of the child's half sibling in 2010, but CFS

was concerned whether the paternal grandmother had the ability to protect the child's half

sibling against Father.  The paternal grandmother assured she would follow court orders,

and CFS intended to place a referral to the assessment unit after the paternal grandmother

provided an address for the new apartment to which she planned to move.

In February 2015, the paternal grandmother reported that she planned on moving

to a bigger apartment on February 11, 2015, and that she needed to check with the

apartment manager to see if she could have more children in the two-bedroom apartment

or if she needed a three-bedroom apartment.  She requested that the relative assessment

---

*[footnote continued from previous page]*
want to be transported because it would probably interfere with his release date."
Father's counsel agreed with the court.

4

be held off until she moved.  As of April 6, 2015, the paternal grandmother had not provided the social worker with her new address.

CFS recommended Father be denied services because he had failed to reunite with the child's half sibling and was the perpetrator of violent crimes.  Father had a very lengthy criminal history that began in 2003 when he was a juvenile, and included arrests for first degree murder, accessory to murder, rape, theft, burglary, vehicle theft, spousal abuse, making criminal threats, possession of a firearm, and drug possession.  Father had two drug arrests, one in 2003 and one in 2004, and a drunk and disorderly charge in 2004. His criminal convictions included carrying a concealed and loaded weapon, false imprisonment, disorderly conduct, resisting an executive officer, and his most recent conviction of assault likely to cause great bodily injury.  He also had numerous parole violations and various acquittals and/or lack of conviction on some other serious charges such as first degree murder and rape.  Father's expected release date from state prison was April 2015.

The social worker noted that Father's ability to care for his children is a concern given his lifestyle; that Father was often absent from his children due to multiple incarcerations; and that Father had six children with different women.  The social worker opined, "The worry is that the children would start forming an attachment only to be disappointed by their father going to prison again or worse, be in the crossfire of an argument and get physically hurt."  The social worker further observed that Father had witnessed domestic violence between his parents, which is "the historical precursor to

5

[Father's] violence, which often contributes to a predisposition to use violence in the home and community." Mother admitted that Father had hit her. Father also engaged in acts of domestic violence with his wife A.W. He had physically fought with A.W., resulting in A.W. having a miscarriage when she was two months pregnant. In addition, after an altercation between Father and A.W., where Father had injured the child's half sibling and A.W., A.W. was hospitalized and the half sibling was removed from Father.[4] Father's reunification services in the half sibling's case were terminated on February 28, 2011, and the case was closed in 2012 with A.W. having full physical and legal custody of the half sibling. After the half sibling's dependency case was closed and Father was released from prison, Father contacted the social worker to visit the half sibling, stating he was unemployed and making an effort to change his life to be successful and not return to prison. The social worker arranged a visit, but Father later cancelled the visit stating he needed to " 'focus on getting things together.' "

On April 2, 2015, CFS filed a request for judicial notice of the section 300 petition filed on behalf of the child's half sibling in April 2010 and related minute orders. The dependency petition in the half sibling's case was filed on April 27, 2010, and the half

---

[4] The record is unclear when this incident occurred. However, the record shows that Father had been arrested on August 12, 2009, for inflicting corporal injury on a spouse/cohabitant, and convicted of false imprisonment on August 21, 2009, and sentenced to 16 months in state prison.

6

sibling was detained on April 24, 2010.[5]  The jurisdictional/dispositional hearing in the half sibling's case was held on June 29, 2010.  Father was present in court.  At that time, the juvenile court sustained allegations against Father alleging that Father "has a criminal history as evidence [*sic*] by a long criminal record and [Father] currently being incarcerated" and that Father "has a substance abuse problem as evidence [*sic*] of drug related charges on his criminal record" thereby placing the child's half sibling at risk of suffering serious harm, abuse, and/or neglect.  Father was provided with reunification services in the half sibling's case, but Father had failed to participate regularly and make substantive progress in his court-ordered treatment plan.  At a hearing on February 28, 2011, wherein Father was not present in court but in state prison custody, Father's services were terminated in the half sibling's case.

At the March 4, 2015 jurisdictional/dispositional hearing in this case, Father was present and in custody.  The juvenile court ordered a paternity test for Father regarding the child's sibling M.P. and continued the matter.[6]

On April 6, 2015, Father filed a waiver of rights (Judicial Council Forms, form JV-190) and submitted on CFS's reports as to jurisdiction.

---

[5]  The date of the half sibling's removal is stated as April 24, 2010, on the section 300 petition filed April 27, 2010, and as April 28, 2010, in the jurisdictional/dispositional report dated February 4, 2015.

[6]  M.P. was removed from Mother's care concurrently with the child.  Father was not found to be M.P.'s biological father and, therefore M.P. is not a subject of this appeal.

At the continued April 6, 2015 jurisdictional/dispositional hearing, Father was present in custody. The juvenile court accepted Father's waiver of rights, sustained the allegations in the petition true as amended, and declared the child a dependent of the court. Following argument, the court denied Father services pursuant to section 361.5, subdivision (b)(10). This appeal followed.

II

DISCUSSION

A.    *Jurisdictional Findings*

Father argues that there was insufficient evidence to support the jurisdictional findings that the child was at substantial risk of physical harm under section 300, subdivisions (b) [neglect], (g) [no provision for support], and (j) [abuse of sibling]. While father challenges the sufficiency of the evidence as to his conduct, he makes no challenge to the jurisdictional findings against Mother.

"When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence. [Citations.]" (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.)

8

Likewise, " '[A] jurisdictional finding good against one parent is good against both. More accurately, the minor is a dependent if the actions of either parent bring [the child] within one of the statutory definitions of a dependent. [Citations.]' " (*In re Briana V.* (2015) 236 Cal.App.4th 297, 308, quoting *In re Alysha S.* (1996) 51 Cal.App.4th 393, 397.) " 'For this reason, an appellate court may decline to address the evidentiary support for any remaining jurisdictional findings.' " (*In re Briana*, at p. 308, quoting *In re I.A.* (2011) 201 Cal.App.4th 1484, 1492 (*I.A.*).)

A similar situation occurred in *I.A.* There, the father asked the court to review the evidentiary support only for the juvenile court's jurisdictional findings against him. The *I.A.* court explained:

"[I]t is necessary only for the court to find that one parent's conduct has created circumstances triggering section 300 for the court to assert jurisdiction over the child. [Citations.] Once the child is found to be endangered in the manner described by one of the subdivisions of section 300[,] the child comes within the court's jurisdiction, even if the child was not in the physical custody of one or both parents at the time the jurisdictional events occurred. [Citation.] For jurisdictional purposes, it is irrelevant which parent created those circumstances. A jurisdictional finding involving the conduct of a particular parent is not necessary for the court to enter orders binding on that parent, once dependency jurisdiction has been established. [Citation.] As a result, it is commonly said that a jurisdictional finding involving one parent is ' "good against both. More accurately, the minor is a dependent if the actions of either parent bring [the minor]

within one of the statutory definitions of a dependent." ' [Citation.] For this reason, an appellate court may decline to address the evidentiary support for any remaining jurisdictional findings once a single finding has been found to be supported by the evidence. (E.g., *In re Alexis E.*[, *supra*,] 171 Cal.App.4th [at p.] 451 [addressing remaining findings only '[f]or [f]ather's benefit']; *In re Joshua G.* [ (2005) ] 129 Cal.App.4th [189,] 202 [when a jurisdictional allegation involving one parent is found supported, it is 'irrelevant' whether remaining allegations are supported]; *In re Shelley J.* (1998) 68 Cal.App.4th 322, 330 [declining to address remaining allegations after one allegation found supported]; *Randi R. v. Superior Court* (1998) 64 Cal.App.4th 67, 72 [same].)" (*I.A.*, *supra*, 201 Cal.App.4th at pp. 1491-1492.)

When "issues raised in [an] appeal present no genuine challenge to the court's assumption of dependency jurisdiction[,] . . . any order we enter will have no practical impact on the pending dependency proceeding, thereby precluding a grant of effective relief. For that reason, we find [such an] appeal to be nonjusticiable." (*I.A.*, *supra*, 201 Cal.App.4th at p. 1491.) "The many aspects of the justiciability doctrine in California were summarized in *Wilson v. L.A. County Civil Service Com.* (1952) 112 Cal.App.2d 450 [246 P.2d 688]: ' "A judicial tribunal ordinarily may consider and determine only an existing controversy, and not a moot question or abstract proposition. . . . [A]s a general rule it is not within the function of the court to act upon or decide a moot question or speculative, theoretical or abstract question or proposition, or a purely academic question, or to give an advisory opinion on such a question or proposition. . . ." ' (*Id.* at

pp. 452-453.)  An important requirement for justiciability is the availability of 'effective' relief—that is, the prospect of a remedy that can have a practical, tangible impact on the parties' conduct or legal status.  ' " ' "It is this court's duty ' "to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." ' " ' " ' [Citations.]" (*I.A.*, *supra*, at p. 1490.)

Here, the juvenile court had jurisdiction over the child under section 300, subdivision (b), based on Mother's conduct, even if the finding as to Father, as he contends, was not supported by substantial evidence.  Father's appeal therefore is nonjusticiable.  (*I.A.*, *supra*, 201 Cal.App.4th at p. 1491.)

Father acknowledges the law relating to justiciability, but claims other authority supports this court's review of the allegations against him.  He argues that the jurisdictional findings as to his conduct may have negative consequences for disposition, reunification, and future dependency actions, as it did when the juvenile court denied him services in this case based on the half sibling's case, and that "there is a general pub[l]ic interest in accuracy in court findings when the subject matter involves divestiture of fundamental parental rights."  Father's contentions are speculative, and there is no reasonable basis to conclude that a future dependency action, let alone several of them, will be filed, or what it, or they, may concern.  Additionally, similar contentions were raised by the father in *I.A.*, *supra*, 201 Cal.App.4th 1484, and rejected.  When rejecting

11

the impact of future dependency arguments by the father in the case before it, the court in *I.A.* explained that the father had "fail[ed] to suggest any way in which this finding actually could affect a future dependency or family law proceeding, and we fail to find one on our own. In any future dependency proceeding, a finding of jurisdiction must be based on current conditions. [Citation.] . . . Other relevant dependency findings similarly would require evidence of present detriment, based on the then prevailing circumstances of parent and child. The prospect of an impact on a family law proceeding is even more speculative." (*Id.* at pp. 1494-1495)

We also reject Father's policy arguments for asserting that he should be able to challenge the jurisdictional findings as to him. The focus of the statutory scheme governing dependency is the protection of children and therefore "it is necessary only for the court to find that one parent's conduct has created circumstances triggering section 300 for the court to assert jurisdiction over the child." (*I.A.*, *supra*, 201 Cal.App.4th at p. 1491.) "A petition is brought on behalf of the child, not to punish the parents. [Citation.] The interests of both parent and child are protected by the two-step process of a dependency proceeding, with its separate adjudication and disposition hearings. Thus, when [the agency] makes a prima facie case under section 300 by proving the jurisdictional facts at the adjudication hearing, it is not improper for the court to sustain the petition; not until the disposition hearing does the court determine whether the minor should be adjudged a dependent." (*In re La Shonda B.* (1979) 95 Cal.App.3d 593, 599.)

12

Thus, because the outcome of Father's appeal on the issue of jurisdiction will not affect the child's dependency status, the jurisdictional finding issue raised by Father is nonjusticiable.

B.    *Denial of Reunification Services*

Father also argues that the court erred in denying him reunification services under section 361.5, subdivision (b)(10), because he was the noncustodial parent at the time the child's half sibling was removed.

Section 361.5, subdivision (b), states that "[r]eunification services need not be provided to a parent . . . when the court finds, by clear and convincing evidence, any of the following:  [¶] . . . [¶]  (10) That the court ordered termination of reunification services for any siblings or half siblings of the child because the parent . . . failed to reunify with the sibling or half sibling after the sibling or half sibling had been removed from that parent . . . pursuant to Section 361 and that parent . . . is the same parent . . . described in subdivision (a) and that, according to the findings of the court, this parent . . . has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling . . . of that child from that parent[.]"

As explained in *In re Allison J.* (2010) 190 Cal.App.4th 1106:  "Section 361.5, subdivision (b) 'reflects the Legislature's desire to provide services to parents only where those services will facilitate the return of children to parental custody.'  [Citations.]"  (*Id.* at p. 1112.)  In section 361.5, subdivision (b), "the Legislature 'recognize[d] that it may be fruitless to provide reunification services under certain circumstances'. . . .  When the

court determines a bypass provision applies, the general rule favoring reunification is replaced with a legislative presumption that reunification services would be ' "an unwise use of governmental resources." ' [Citations.]" (*In re Allison J.*, *supra*, at p. 1112.)

Section 361.5, subdivision (b)(10), contemplates a two-prong inquiry: (1) whether the parent previously failed to reunify with the child's sibling or half sibling; and (2) whether the parent "subsequently made a reasonable effort to treat the problems that led to the removal of the sibling or half sibling . . . ." (§ 361.5, subd. (b)(10).) Father does not challenge these two prongs; rather, he argues that subdivision (b)(10) of section 361.5 does not apply here because there is insufficient evidence that the child's half sibling was removed from Father's physical custody in the prior dependency proceeding.

We review questions of statutory construction de novo. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432; *In re Heraclio A.* (1996) 42 Cal.App.4th 569, 574.) In construing the language of section 361.5, subdivision (b)(10), we look to the words of the statute to determine legislative intent and to fulfill the purpose of the law. (*Gooch v. Hendrix* (1993) 5 Cal.4th 266, 282.) We interpret the language in the context of the entire statute and the overarching statutory scheme, and we give significance to every word, phrase, sentence and part of an act in discerning the legislative purpose. (*People v. Canty* (2004) 32 Cal.4th 1266, 1276.) We must also give the statute a reasonable and commonsense interpretation consistent with the apparent purpose and intent of the lawmakers and resulting in wise policy rather than mischief or

absurdity. (*Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 744 (*Renee J.*), superseded by statute on another ground as stated in *Renee J. v. Superior Court* (2002) 96 Cal.App.4th 1450, 1457 and *City of Westwood v. 1112 Investment Co.* (2003) 105 Cal.App.4th 1134, 1147.)

Applying the above statutory interpretation principles, we find that subdivision (b)(10) of section 361.5 applies to a noncustodial parent. *In re Adrianna P.* (2008) 166 Cal.App.4th 44 (*Adrianna P.*) supports our conclusion. In that case, Division One of this court resolved the question of whether "the juvenile court erred as a matter of law when it determined that it was without authority to deny services to a noncustodial parent pursuant to section 361.5 where that parent requested placement but the court denied the request under section 361.2, subdivision (a)." (*Adrianna P.* at p. 53.) There, the department asserted that the provisions of section 361.5 that permit the court to bypass family reunification services apply to a noncustodial parent. (*Ibid.*) Relying on prior case law, as Father does in this case, the parents asserted that "section 361.2 addresses the noncustodial parent's circumstances and controls whether reunification services should be provided to that parent, while section 361.5 is 'clearly directed to the custodial parent or parents.' " (*Adrianna P.*, *supra*, at pp. 53-54, quoting *In re Terry H.* (1994) 27 Cal.App.4th 1847, 1856 (*Terry H.*), superseded by statute on another ground as stated in *In re Nolan W.* (2009) 45 Cal.4th 1217, 1233, fn. 7.) The parents further argued that appellate courts have consistently applied section 361.2 to noncustodial parents and section 361.5 only to custodial parents. (*Adrianna P.*, at pp. 53-54, citing *Robert L. v.*

*Superior Court* (1996) 45 Cal.App.4th 619, 628-629; *R.S. v. Superior Court* (2007) 154 Cal.App.4th 1262, 1271 (*R.S.*); *In re V.F.* (2007) 157 Cal.App.4th 962, 973 (*V.F.*). superseded by statute on other grounds as stated in *Adrianna P.*, at pp. 57-58.) Accordingly, the parents maintained that the bypass provisions of section 361.5 do not apply to a noncustodial parent. (*Adrianna P.*, at p. 54.)

Following a legislative analysis of sections 361.2 and 361.5, the *Adrianna P.* court concluded, as a matter of first impression, that section 361.5 governs the grant or denial of reunification services to a noncustodial parent who has not assumed custody of his or her child under section 361.2, subdivision (b). (*Adrianna P.*, *supra*, 166 Cal.App.4th at pp. 54-57.) The court also held that "the juvenile court is not required to distinguish between a custodial and noncustodial parent when ordering or bypassing reunification services for a child in out-of-home placement." (*Adrianna P.*, at p. 57.) The *Adrianna P.* court explained: "Our conclusion that section 361.5, including its bypass provisions, can apply to a noncustodial parent is consistent with public policy consideration underlying the goal of family reunification. It is axiomatic that reunification services play a 'crucial role' in dependency proceedings and a case plan must be carefully tailored to meet the needs of the child and family. [Citations.] Whether the court has removed the child from a custodial parent or has denied a noncustodial parent's request for placement, the focus of the proceedings is to reunify the child with a parent, when safe to do so for the child. [Citations.] However, there are circumstances in which reunification with a particular parent is presumptively contrary to the child's best interest. [Citations.] When those

16

circumstances apply, the bypass provisions of section 361.5 protect the child, promote the child's permanency and stability, and help focus limited resources where they can best effect the goals of child protection and family reunification. These provisions have a crucial role in meeting the primary goals of dependency proceedings, and logically apply to both a custodial and noncustodial parent." (*Adrianna P.* at p. 59, fn. omitted, italics omitted.)

As the parents did in *Adrianna P.*, relying on *R.S.*, *supra*, 154 Cal.App.4th 1262, *Terry H.*, *supra*, 27 Cal.App.4th 1847, and *V.F.*, *supra*, 157 Cal.App.4th 962, Father argues that "[s]ection 361 does not apply to a noncustodial parent." As explained by the court in *Adrianna P.*, *supra*, 166 Cal.App.4th at pages 55 to 59, we reject Father's contentions. We also reject Father's contention that *Adrianna P.* is inapplicable or irrelevant to this case because the court in *Adrianna P.* was not addressing whether a sibling or half sibling was removed from that parent under section 361 or applying the language of section 361.5, subdivision (b)(10).

While we recognize that section 361.5, subdivision (b)(10), includes the language "had been *removed* from that parent . . . pursuant to Section 361," (italics added) in construing the statutory scheme as a whole, we find the Legislature did not intend to limit the statute's application only to custodial parents. Had the Legislature intended to limit

17

the application of section 361.5, subdivision (b)(10), to custodial parents, it would have done so.[7]

We are not persuaded by Father's claim during oral argument that section 361.5, subdivision (b)(10), does not apply to a noncustodial parent of the child's sibling or half sibling. Father appears to interpret the term "removal" in section 361.5, subdivision (b)(10), to mean the taking of the child "from the physical custody of [the parent] with whom the child resides at the time the petition was initiated," as defined in section 361, subdivision (c), and argues a child cannot be "removed" from a noncustodial parent. (See, e.g., *V.F.*, *supra*, 157 Cal.App.4th at p. 969 [§ 361, subd. (c), does not apply to a noncustodial parent of the child].) In this context, we find the term "removal" encompasses the continued removal of the child's sibling or half sibling from the care of his or her parent during the previous dependency proceedings, notwithstanding the parent's custodial status. "Custody," based on the definitions of "custody" in the Welfare and Institutions Code, the Family Code, the California Code of Regulations, and Black's Law Dictionary, connotes "the parent has the right to make decisions pertaining to the child, and has legal possession of the child." (*In re Austin P.* (2004) 118 Cal.App.4th 1124, 1130-1131; see *In re A.A.* (2012) 203 Cal.App.4th 597, 605 [Fourth Dist., Div. Two].) We believe the Legislature contemplated section 361.5, subdivision (b)(10),

---

[7] "If we have failed to discern correctly the Legislature's intent in enacting the statute, that body may clarify the statute accordingly." (*Renee J.*, *supra*, 26 Cal.4th at pp. 748-749.)

18

to apply in these circumstances whether or not a parent has *custody* of the child's sibling or half sibling.

Interpreting section 361.5, subdivision (b)(10), to apply only to custodial parents would result in absurd consequences. (*In re Christina A.* (2001) 91 Cal.App.4th 1153, 1162 [courts must adopt the meaning that conforms to the spirit of the statutory scheme and reject interpretations that would result in absurd consequences].) Such an interpretation would delay permanency for the child of a noncustodial parent who had been unable or unwilling to reunify with the child's sibling or half sibling. This would lead to an inconsistent application of the bypass provision depending on the custodial status of the parent at the time the sibling's or half sibling's dependency proceeding was initiated, notwithstanding the fact that a parent was unable to reunify with the sibling or half sibling and a parent's circumstances had merited termination of his or her parental rights to the child's sibling or half sibling.

We are not persuaded by Father's assertion during oral argument that our interpretation of section 361.5, subdivision (b)(10), would render subdivision (b)(11) of that section surplusage. Our interpretation "is in harmony with the underlying purpose of the dependency scheme to protect the welfare and best interests of the child." (*Francisco G. v. Superior Court* (2001) 91 Cal.App.4th 586, 598.) Father's interpretation would ignore the best interest of the child and delay permanency for the child. "If the child's parent has suffered the previous termination of parental rights as to a sibling or half

19

sibling, there is the potential that providing reunification services would be fruitless in light of the parent's past history." (*Ibid*.)

Based on the foregoing, we reject Father's contention that the juvenile court erred in applying section 361.5, subdivision (b)(10), under the circumstances of this case because he was a noncustodial parent of the child's half sibling.

## III

## DISPOSITION

The judgment is affirmed.

CERTIFIED FOR PARTIAL PUBLICATION

RAMIREZ
                                                                    P. J.

We concur:


MILLER
                J.


CODRINGTON
                J.