Filed 3/17/21  In re A.R. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.R. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E075878 |
| Plaintiff and Respondent, | (Super.Ct.Nos. J284400, J284401 & J284402) |
| v. | OPINION |
| L.R., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Erin K. Alexander, Judge.  Affirmed.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Michelle D. Blakemore, County Counsel, and Svetlana Kauper, Deputy County Counsel, for Plaintiff and Respondent.

1

I

INTRODUCTION

Appellant, L.R. (Father), appeals from a dispositional order of the juvenile court in a Welfare and Institutions Code section 300[1] proceeding involving three of his children.[2] Father contends the juvenile court erred in bypassing reunification services to him pursuant to section 361.5, subdivisions (b)(11), (b)(12), and (b)(16), and finding services were not in the children's best interest.[3] We find no error and affirm the order.

II

FACTUAL AND PROCEDURAL BACKGROUND

A.    *Two Prior Dependency Matters Involving Father*

Father has a child welfare history, dating back to 2016, for allegations related to emotional abuse, general neglect, and sexual abuse. Father also has an extensive criminal history, involving numerous parole violations and charges related to possession of controlled substances, lewd and lascivious acts with a child, theft, burglary, robbery, receiving stolen property, and vandalism. Among other charges, Father was convicted of lewd and lascivious acts with a child under the age of 14 (Pen. Code, § 288, subd. (a)) and was sentenced to six years in prison. Father was also required to register as a sex offender under Penal Code section 290.

---

[1]  All future statutory references are to the Welfare and Institutions Code.

[2]  The children's half siblings are not subjects to this appeal.

[3]  J.C.-H. (Mother) is not a party to this appeal.

In December 2016, as to Father's child N.R., Father was denied services pursuant to section 361.5, subdivisions (b)(12) and (b)(16). He was also denied visitation to N.R. because it was found to be detrimental. Father's parental rights as to N.R. were terminated in December 2017, and on August 23, 2019, the child was adopted.

In February 2018, Father's reunification services were also bypassed as to his child J.A.R. pursuant to section 361.5, subdivision (b)(16). The court ordered no visitation between J.A.R. and Father as visits were deemed detrimental. J.A.R.'s petition was dismissed on September 12, 2019, with family law orders granting the child's mother custody. In J.A.R.'s case, the child was removed from Father's care, in part, due to Father's substance abuse history and his conviction for committing lewd and lascivious acts on a child under the age of 14.

B. *Current Dependency*

On February 18, 2020, three-month old twins, A.R. and M.R., and their two-year-old sister, J.R., came to the attention of the San Bernardino County Children and Family Services (CFS) after a referral was received alleging physical abuse to their half sister, M.W., by Mother. From February 18, 2020 until February 27, 2020, CFS received three different referrals regarding the children and their three half siblings. The allegations pertained to physical and emotional abuse to the children.

An investigation revealed that Mother physically disciplined the children's half siblings, M.W., D.W., and N.W., who were five, six, and seven years old, respectively, with a belt, brush, or hanger, resulting in welts, marks, or bruises. The investigation also

disclosed domestic violence in the home between Mother and Father. D.W. explained that Father hit Mother "'everywhere'" and that Father choked Mother by grabbing her by the neck and "'punching her everywhere.'" N.W. corroborated D.W.'s statements. The older children also reported that Mother "'[drank] a lot'" while Father "roll[ed] 'wrap papers'" after having sprinkled something into the roll.

N.W. later recanted her prior statements to the social worker, noting Mother had cautioned them "'not [to] talk too much.'" M.W. and D.W. were also reluctant to speak with the social worker when conducting a further investigation, with D.W. denying any domestic violence in the home since the twins were born. N.W., D.W., and M.W. all reported feeling safe in the home with Mother and Father. However, when CFS received a third referral on February 27, 2020, alleging physical abuse of D.W., D.W. admitted that Mother had hit him with a belt, causing bruises and scratches to the child's upper right thigh. D.W. later changed the explanation of his bruises several times stating that he fell off a slide or that another child at school pushed him. When the social worker attempted to speak with M.W. and N.W. following the third referral, the children appeared evasive. M.W. avoided eye contact and explained Mother told them not to talk to the social worker. The social worker opined the children appeared coached, fearful, and reluctant to answer any questions.

Mother denied the allegations and reported that Father was a registered sex offender with no restrictions in place as to his biological children or other children. She believed the children "constantly lie[d]." At the time of the referral, the family resided in

4

a motel, but by February 20, 2020, Mother and her six children had moved into an appropriate residence. Father did not reside at the residence but visited every day or every other day and brought money or food.

A forensic medical examination of D.W., N.W., and M.W. corroborated the statements by the children that they had been hit with a belt. The findings concerning D.W. and N.W. were indicative of physical abuse. The findings as to M.W. were deemed nonspecific and may have been the result of inflicted or accidental origin.

On February 28, 2020, CFS removed the children from parental custody pursuant to detention warrants. On March 3, 2020, CFS filed section 300 petitions on behalf of the children pursuant to section 300, subdivisions (b) (failure to protect) and (j) (abuse of sibling). The allegations against Father included a history of domestic violence, history with substance abuse, and his criminal history, which included Father's status as a registered sex offender.

At the March 4, 2020 detention hearing, Father advised the juvenile court that he had previously had another dependency case. The court informed Father of a potential bypass of reunification services at disposition based on his prior history. In the interim, the court ordered CFS to provide pre-dispositional services to the parents. Father and Mother were also ordered to drug test. Father's counsel objected to the drug test order, explaining "marijuana use is legal in California." The court also ordered supervised visits for the parents once a week for two hours.

In a jurisdictional/dispositional report dated March 26, 2020, CFS recommended that the court find the allegations in the petitions true and that Father's reunification services be bypassed under section 361.5, subdivision (b)(16). Father disclosed that he had three other children who resided with their mothers and that he regularly visited two of the children but had no contact with the third one. Father stated that neither Mother nor he used physical discipline with the six children residing in his home. Father also denied domestic violence in his relationship with Mother.

In an addendum report dated June 25, 2020, CFS recommended the juvenile court bypass Father's reunification services pursuant to section 361.5, subdivisions (b)(10) [termination of services in half siblings' cases], (b)(11) [termination of parental rights in half siblings' cases], (b)(12) [parent convicted of violent felony], and (b)(16) [parent required to register as a sex offender]. The report also outlined the services to which Father was referred to in March 2020. He was referred to individual counseling, parenting classes, a domestic violence program, and random drug testing.

On March 4, 2020, Father tested positive for marijuana; his quantitative level was 864 ng/mL with a limit of 15 ng/mL. By April 21, 2020, Father stopped participating in random drug testing. He claimed he was unaware of his color and the procedures, despite the social worker having explained the protocols. Father missed a total of six drug tests over a four-month period. Father also resisted engaging in services without a court order. CFS encouraged Father and Mother to participate in pre-dispositional services. Father asserted that he had begun to participate in services, but he did not provide the social

6

worker with a confirmation of enrollment from the service providers. Father eventually refused to drug test or to enroll in a substance abuse program. The social worker was concerned that Father and Mother did not take CFS's concerns seriously and feigned unawareness of CFS's expectations in their pre-dispositional services.

Regarding Father's visits with the children, the social worker observed Father's first visit with the children on March 9, 2020. Father appeared engaged with the children, but exaggerated all play and constantly made the children hug each other, despite the fact that the four older children were placed together and saw each other every day. The social worker noted that Father played "rough" with the older children and was somewhat rough when holding the infant twins. Since March 2020, Father had missed a number of in-person and video visits. When Father did attend some video visits, he appeared disengaged and multi-tasked the video visit with other activities such as getting dressed or driving. The caregiver also reported that Father was overheard cussing and talking to other people during the phone visit, which resulted in a terminated visit.

By October 7, 2020, CFS's recommendation to bypass Father's reunification services remained the same. Father continued to miss random drug tests, and by October 2020, had failed to appear for drug testing on 13 different occasions from March 30 to September 24, 2020. In addition, by October 2020, Mother and Father continued to miss their scheduled visits with the children and visits with the children were inconsistent. Father missed approximately five visits from April 23 to June 15, 2020. In August 2020, however, Father made daily phone calls to the children. On

September 21, 2020, Father cancelled his visit but attended an in-person visit with the children on September 28, 2020. The children's caregiver reported that when the parents did make contact with the children, the phone calls were brief, 10-minute calls. The caregiver also noted that the children were upset after Mother disclosed she was six weeks pregnant with another child and that they did not understand why the parents were having another child.

On August 10, 2020, Mother advised CFS that she and Father had completed parenting classes and a domestic violence program. In addition, Father provided a progress report from his individual counseling and acknowledged that physical discipline was a harmful and ineffective way of punishment. Father's therapist believed Father would benefit from an additional eight sessions of individual counseling and recommended Father attend an anger management course, among other programs. The social worker, however, was concerned whether Father had benefitted from the services he had received in light of his behavior at visits, his refusal to engage in drug testing, accept any responsibility for the children's removal, or to address the reasons that led to the children's removal.

The contested jurisdictional/dispositional hearing was held on October 7, 2020. Father testified that he had completed a parenting program, a domestic violence program, and individual counseling, but did not know whether he received any certificates of completion. Father did not attend an anger management course, but claimed that he had enrolled in an outpatient substance abuse program "four weeks ago" and submitted to

8

drug testing.  Father noted that the last time he attended the drug program was two weeks prior to the hearing.  He also explained that he was required to address sexual abuse as a condition of his parole.  Father's victim was 12 years old, and he acknowledged that he had served a six-year prison term for committing lewd acts on a child.

Following Father's testimony and arguments from the parties, the court found true the allegations in the petitions.  The court declared the children dependents of the court and bypassed Father's reunification services under section 361.5, subdivisions (b)(11), (b)(12), and (b)(16).  In denying Father reunification services, the court noted the gravity of Father's criminal offense.  The court was willing to consider any evidence of "whether his paroled therapy constituted a change but [it did not have] such evidence before the court."  The court was also concerned that despite the seriousness of the offense "Father [seemed] [to] downplay[] the nature of the conviction in his testimony and that does not show any sufficient therapeutic intervention."  The court also noted that Father's most recent individual therapy did not address the issue of sexual abuse and Father's willingness to participate in services did not rise to the required level of clear and convincing evidence.  The court explained that "[t]here's been little evidence, if any, to show that the children—that the services would be in the children's best interest."  As to bypassing services under section 361.5, subdivision (b)(11), the court noted its concern that "one of the allegations in his prior case of the half-siblings was substance abuse and throughout the life of this case [Father] refused to consistently test, which I think heightens the other concern regarding future sexual abuse."  The court therefore denied

9

Father reunification services, but granted Father supervised visitation with the children, to be held separately from Mother's visits.[4]

On October 7, 2020, Father filed a timely notice of appeal challenging the bypass of reunification services for A.R., M.R., and J.R.

III

DISCUSSION

Father contends the juvenile court erred in bypassing reunification services for him because he would benefit from services, services would make him a better parent, and services would be in the children's best interest. We disagree.

The juvenile court shall order reunification services for a parent and child when a child is removed from a parent's custody. (§ 361.5, subd. (a).) There are exceptions to this general rule, commonly called "bypass" provisions set forth in section 361.5, subdivision (b). "'Section 361.5, subdivision (b) "reflects the Legislature's desire to provide services to parents only where those services will facilitate the return of children to parental custody." [Citations.]' [Citation.] In section 361.5, subdivision (b), 'the Legislature "recognize[d] that it may be fruitless to provide reunification services under certain circumstances" . . . . When the court determines a bypass provision applies, the general rule favoring reunification is replaced with a legislative presumption that reunification services would be "'an unwise use of governmental resources.'"

[Citation.]' [Citation.]" (*In re B.H.* (2016) 243 Cal.App.4th 729, 736.)

---

[4] The court granted Mother reunification services and ordered her to participate in her case plan.

10

Here, the juvenile court bypassed Father's reunification services under section 361.5, subdivisions (b)(11), (b)(12), and (b)(16). Under subdivision (b)(11), a juvenile court need not provide a parent with reunification services when "the parental rights of a parent over any sibling or half sibling of the child had been permanently severed, and this parent is the same parent . . . and that, according to the findings of the court, this parent has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling of that child from the parent." (§ 361.5, subd. (b)(11).) Father does not dispute that his parental rights were terminated in the half siblings' cases.

Subdivision (b)(12) provides in pertinent part that "[r]eunification services need not be provided to a parent . . . when the court finds, by clear and convincing evidence," "[t]hat the parent . . . has been convicted of a violent felony, as defined in subdivision (c) of Section 667.5 of the Penal Code." (Welf. & Inst. Code, § 361.5, subd. (b)(12).) Father here was convicted of committing lewd and lascivious acts on a child under the age of 14 in violation of Penal Code section 288, subdivision (a). This offense is a violent felony listed in Penal Code section 667.5, subdivision (c), and Father does not dispute otherwise.

Subdivision (b)(16) allows a juvenile court to bypass a parent's services if the parent "has been required by the court to be registered on a sex offender registry under the federal Adam Walsh Child Protection and Safety Act of 2006 . . . ." (§ 361.5, subd. (b)(16).) Father does not dispute that he was required to register as a sex offender.

11

The juvenile court therefore did not err in bypassing Father's reunification services under the authority of section 361.5, subdivisions (b)(11), (b)(12), and (b)(16). Father does not dispute the application of these bypass provisions to his case. Rather, he contends the court erred in denying him reunification services because granting him services were in the best interest of the children and he would benefit from services. He believes services were in the children's best interest since he had been participating in services, Mother was provided with services and they still maintained a relationship, and the court allowed him continued supervised visits with the children.

Once the juvenile court determines that a bypass provision listed in section 361.5, subdivision (b), applies, "it shall not order reunification services for that parent 'unless the court finds, by clear and convincing evidence, that reunification is in the best interest of the child.' (§ 361.5, subd. (c)(2).)" (*Jennifer S. v. Superior Court* (2017) 15 Cal.App.5th 1113, 1124 (*Jennifer S.*).) The parent bears the burden of proving that reunification services would be in the child's best interest. (*Ibid*.)

In determining whether reunification would be in the child's best interest, the juvenile court should consider the parent's current efforts, fitness and history; the gravity of the problem that led to the dependency; the strength of the bonds between the parent and child and between the child and his or her caretakers; and the child's need for stability and continuity. (*In re William B.* (2008) 163 Cal.App.4th 1220, 1228.)

We review a juvenile court's denial of reunification services for substantial evidence. (*Jennifer S.*, *supra*, 15 Cal.App.5th at p. 1121.) In conducting our review, "we

do not make credibility determinations or reweigh the evidence. [Citation.] Rather, we 'review the entire record in the light most favorable to the trial court's findings to determine if there is substantial evidence in the record to support those findings.' [Citation.]" (*Id.* at pp. 1121-1122.) We will imply necessary findings if supported by the record. (*In re S.G.* (2003) 112 Cal.App.4th 1254, 1260.)

Substantial evidence supports the juvenile court's finding that providing reunification services to Father would not be in the children's best interest. Although Father eventually participated in pre-dispositional services, the record is replete with the instances where Father did not take CFS's concerns seriously and feigned unawareness of CFS's expectations in their pre-dispositional services. There is also no indication that Father benefitted from the programs in which he participated. Father's progress in his services was questionable in light of Father's refusal to engage in drug testing, failing to accept any responsibility for the children's removal, and failing to address the reasons that led to the children's removal. The record indicates Father did not use the visits to implement the techniques he had learned in his parenting classes.

Furthermore, as the juvenile court noted, the gravity of Father's criminal offenses was serious and there was no evidence to suggest that Father had addressed the issue of sexual abuse in his therapeutic sessions. Moreover, the twins were infants, three months old, and their sister J.R. was two years old when they were removed from Father's care. Father's visits with his children were also inconsistent. There is no evidence in the record to show Father had any bond with his children or whether a genuine parent/child

13

relationship existed between Father and the children. Father presented no evidence to rebut the legislative presumption that reunification services would be fruitless or that providing him with services would be in the children's best interest. The juvenile court concluded that providing Father reunification services did not serve the children's best interest. Under the circumstances of this case, we concur.

IV

DISPOSITION

The juvenile court's dispositional order denying Father reunification services is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
Acting P. J.

We concur:


SLOUGH
J.


RAPHAEL
J.