Filed 4/13/21  C.T. v. Superior Court CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| C.T., | |
| Petitioner, | E076442 |
| v. | (Super.Ct.No. J285384) |
| THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, | OPINION |
| Respondent; | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Christopher B. Marshall, Judge.  Petition denied.

Friedman and Cazares and Linda A. Guzman for Petitioner.

No appearance for Respondent.

1

Michelle D. Blakemore, County Counsel, and David Guardado, Deputy County Counsel, for Real Party in Interest.

The juvenile court denied petitioner C.T. (mother) reunification services as to A.T. (minor) pursuant to Welfare and Institutions Code[1] section 361.5, subdivision (b)(10) (reunification services terminated as to minor's siblings) and (b)(11) (parental rights terminated as to minor's sibling), and set the section 366.26 hearing. On petition for extraordinary writ, mother contends insufficient evidence supported the juvenile court's application of the bypass provisions of section 361, subdivision (b)(10) and (b)(11). The petition is denied.

## FACTUAL AND PROCEDURAL HISTORY

On April 12, 2020, personnel from real party in interest, San Bernardino County Children and Family Services (the department), received an immediate response referral alleging caretaker incapacity as to minor's siblings, K.T. and M.T. An officer responded to a call that mother was unconscious on the side of the road next to her vehicle; K.T. and M.T. were with her, either in the vehicle or next to it.[2] Mother had pinpoint, nonresponsive pupils. It took two doses of Narcan to bring mother to consciousness,

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise noted.

[2] A portion of the detention report reflects that minor and another child were with mother at the vehicle; however, the remaining content of that report as well as subsequent reports makes it clear that only K.T. and M.T. were with mother at the vehicle. In fact, it appears minor could not initially be located. There is no further reference to the other child in any of the reports.

2

leading to the conclusion mother had overdosed on an opioid. Mother later reported that she was having a migraine and asked a friend for some medication. She took an unknown pill, which she was given. When the pain did not subside, she took an additional pill. Mother tested positive for opiates, benzodiazepines, and marijuana. She reported a history of bipolar disorder and depression for which she said she took prescribed medication.

The social worker received reports that the family may have been living in the vehicle. The vehicle was filled with grime, trash, food wrappers, and blankets such that the floor of the vehicle could not be seen. Feces was found inside the vehicle. M.T. was found outside the vehicle without pants; he defecated and urinated outside the vehicle. K.T. and M.T. were taken into protective custody and placed in a foster family agency home.

The social worker "continued her efforts in locating" minor. She located minor on May 29, 2020, at the paternal grandmother's home. On June 1, the social worker obtained a detention warrant for minor; the paternal grandmother's home was approved as an emergency placement for minor on that date.

Mother had an extensive history with the department beginning on November 18, 2010, through October 2, 2019, which included 16 prior reports, five of which had been substantiated. Mother's prior dependency case with minor's siblings, T.T. and P.T., "revealed that the mother has a problem with abusing prescription medication . . . and

untreated mental health problems." Mother had an extensive criminal history including robbery, grand theft, kidnapping, and multiple burglaries.

On June 3, 2020, department personnel filed a juvenile dependency petition alleging, as to mother with respect to minor, she had a prescription medication abuse problem (b-1); had untreated mental illnesses (b-2); her services and parental rights were terminated as to sibling T.T. "due in part to [mother's] substance abuse, criminal history, mental health, and domestic violence" (b-4); her services were terminated as to sibling P.T. "due in part to [mother's] substance abuse, criminal history, mental health, and domestic violence" (b-5); that siblings K.T. and M.T. had been adjudged dependents due in part to mother's substance abuse problems for which she was receiving reunification services (b-6); her services and parental rights were terminated as to sibling T.T. "due in part to [mother's] substance abuse, criminal history, mental health, and domestic violence" (j-9); her services were terminated as to sibling P.T. "due in part to [mother's] substance abuse, criminal history, mental health, and domestic violence" (j-10); and siblings K.T. and M.T. had been adjudged dependents due in part to mother's substance abuse problems for which she was receiving reunification services (j-11). On June 4, 2020, the juvenile court detained minor.

In the jurisdiction and disposition report filed June 19, 2020, the social worker recommended the court find the allegations true, remove minor from mother's custody, and deny her reunification services pursuant to the bypass provisions. The juvenile court had removed K.T. and M.T. from mother's custody on May 20, 2020, due in part to

4

mother's substance abuse issues. Mother reported she had been prescribed psychotropic medications approximately 10 years earlier, but she did not know how to use them. She stopped taking them because she did not like the way they made her feel. Mother denied any use of illicit or prescription drugs. Mother submitted an on-demand drug test on May 1, 2020, which was positive for marijuana. The juvenile court terminated her reunification services as to both siblings T.T. and P.T., and her parental rights were denied as to T.T.

In an additional information to the court report filed June 24, 2020, the social worker reported that mother had failed to show for drug testing on May 4 and June 11. The results for tests taken on May 29 and June 15 were still pending. Attached to the report was a copy of the first amended juvenile dependency petition filed May 24, 2011, as to P.T. and T.T. The petition reflects allegations that mother abused controlled substances (b-2) and had a mental health diagnosis of bipolar disorder (b-3); the b-2 allegation was crossed out with the word "stricken" written across it. A minute order dated May 24, reflects that the juvenile court found the allegations in the petition true and removed P.T. and T.T. from mother's custody.[3]

A minute order dated August 15, 2012, reflects the juvenile court terminated mother's reunification services as to T.T., and a minute order dated December 13 reflects the juvenile court terminated mother's parental rights as to T.T.

---

[3] The minute order does not reflect the striking of the b-2 allegation.

5

In an additional information to the court report filed September 14, 2020, the social worker reported that on June 15, 30, July 14, 31, and August 31, mother tested positive for marijuana. On July 31, mother tested positive for benzodiazepines, and on August 31, she tested positive for opiates. Mother reported being prescribed rizatriptan benzoate, hydrocodone, Lamictal, and marijuana; however, according to the social worker, mother was unable to provide proof of her prescribed medications or the dates on which they had been prescribed. Contrariwise, attached to the report was a prescription for marijuana dated June 24, a prescription for rizatriptan benzoate dated August 14, and an undated copy of a prescription for hydrocodone.

Mother provided certificates of completion for online parenting education and drug and alcohol awareness courses. Mother was purportedly addressing her mental health issues, but her doctor would not release information without a consent release.[4] Mother reported attending seven Alcoholics Anonymous/Narcotics Anonymous classes, but the social worker had not received any verification. The social worker opined, "Overall, it appears that . . . mother is trying to comply with all recommended services. She has been actively seeking psychiatric services, initiating services on her own, and has completed the services requested by the Department."

---

[4] Mother signed a records release on the department's form; however, her doctor would not accept the release, instead insisting that mother sign a record release provided by the doctor's office.

In an additional information to the court report dated January 8, 2021, the social worker reported mother had tested positive for marijuana on September 4, 2020, and January 6, 2021; positive for ethanol on October 30, 2020; positive for methamphetamine on December 4 and 8, 2020; and positive for hydrocodone on December 8, 2020, for which the social worker acknowledged mother had a prescription. On October 7, 2020, mother said she was unable to provide a sample; the technician told her to drink some water, but mother left. Mother failed to show for tests on November 2, 4, December 10, and 22, 2020.

Mother testified at the contested jurisdiction and disposition hearing on January 8, 2021, that she had a prior juvenile dependency case 10 years earlier, which was related to prescription medication substance abuse. Mother's reunification services and parental rights to T.T. were terminated.

Mother did not believe she had a substance abuse problem but acknowledged she was taking prescribed marijuana for migraines. Mother also noted that she had tested positive for methamphetamine but denied taking it. She said she had taken a hair follicle test, which proved she had not taken methamphetamine.[5]

Mother testified she had been diagnosed with bipolar disorder for which she was regularly taking medication 10 years earlier but said the medication was too strong for

---

[5] Mother's counsel apparently attempted to introduce a copy of the hair follicle test, off the record, prior to the hearing, but that request was been denied.

her.  She stated that she had not taken any prescription medication since then, until this year, and said she was seeing a therapist weekly.

The court noted that mother's positive methamphetamine test and her multiple failures to show for tests showed "there is a current substance abuse problem that mother is grappling with."  The court found all the allegations in the petition true, except for b-6 and j-11, which the court dismissed.[6]  The court found that mother "is still actively fighting a medication and substance abuse issue."  "[S]he's got a longstanding issue and problem with substance abuse and medication abuse."  Thus, the court denied mother reunification services pursuant to section 361.5, subdivision (b)(10) and (b)(11).  The court also set a section 366.26 hearing.

## II. DISCUSSION

Mother contends the court erred in denying her reunification services pursuant to the bypass provisions of section 361.5, subdivision (b)(10) and (b)(11).  Specifically, she maintains insufficient evidence supports the juvenile court's finding that prescription medication abuse was one of the bases that led to the removal of minor's siblings.  Mother also argues there was insufficient evidence that she failed to make reasonable efforts to treat the substance abuse and mental health issues that led to minor's siblings' removal.  The department argues substantial evidence supports the juvenile court's

---

[6] The court also struck the portion of the b-2 allegation alleging mother suffered from depression, finding only that mother's mental health issues were related to bipolar disorder.

8

findings that mother had untreated mental health and prescription drug abuse issues that led to the removal of minor's siblings, and mother failed to make reasonable efforts to treat those problems.[7] We agree with the department.

"Section 361.5, subdivision (b), states that '[r]eunification services need not be provided to a parent . . . when the court finds, by clear and convincing evidence, any of the following: [¶] . . . [¶] (10) That the court ordered termination of reunification services for any siblings or half siblings of the child because the parent . . . failed to reunify with the sibling or half sibling after the sibling or half sibling had been removed from that parent . . . and that . . . parent . . . has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling . . . .'" (*In re B.H.* (2016) 243 Cal.App.4th 729, 735-736.)

"Section 361.5, subdivision (b)(11) provides: 'Reunification services need not be provided to a parent or guardian described in this subdivision when the court finds, by clear and convincing evidence, any of the following: [¶] . . . [¶] (11) That the parental rights of a parent over any sibling or half sibling of the child had been permanently severed, and this parent is the same parent described in subdivision (a), and that, according to the findings of the court, this parent has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling of that child from the parent.'" (*D.F. v. Superior Court* (2015) 242 Cal.App.4th 664, 669-670.)

---

[7] Minor's trial counsel filed a notice of joinder to the department's argument.

"'When the court determines a bypass provision applies, the general rule favoring reunification is replaced with a legislative presumption that reunification services would be "'an unwise use of governmental resources.'"'" (*In re B.H.*, *supra*, 43 Cal.App.4th at p. 736.)

The statutory term, "'problems that led to removal,'" is not restricted to problems alleged in the petition. (*In re Lana S.* (2012) 207 Cal.App.4th 94, 108; accord *Jennifer S. v. Superior Court* (2017) 15 Cal.App.5th 1113, 1123.) A juvenile court may apply the subdivision (b)(10) and (b)(11) bypass provisions where the parent's failure to reunify with the child's siblings was based, at least in part, on issues raised in the current case, even where not specifically raised in the prior petition. (*In re Lana S.*, at p. 108 [Where the petitioner's "drug abuse had been a recurrent theme," "[i]t unquestionably posed a problem throughout the prior proceedings because it was a substantial component of her service plan"; therefore, "we construe the term 'problems that led to removal' in section 361.5, subdivision (b)(10) and (11) to include drug abuse, even though it was not alleged in the petitions."].)

Section 361.5, subdivision (b)(10) and (b)(11), "contemplate[] a two-prong inquiry: (1) whether the parent previously failed to reunify with the child's sibling or half sibling; and (2) whether the parent 'subsequently made a reasonable effort to treat the problems that led to [the] removal of the sibling or half sibling.'" (*In re B.H.*, *supra*, 243 Cal.App.4th at p. 736.) "'We do not read the "reasonable effort" language in the bypass provisions to mean that any effort by a parent, even if clearly genuine, to address

10

the problems leading to removal will constitute a reasonable effort and as such render these provisions inapplicable.  It is certainly appropriate for the juvenile court to consider the duration, extent and context of the parent's efforts, as well as any other factors relating to the quality and quantity of those efforts, when evaluating the effort for reasonableness. And while the degree of progress is not the focus of the inquiry, a parent's progress, or lack of progress, both in the short and long term, may be considered to the extent it bears on the reasonableness of the effort made.  [¶]  Simply stated, although success alone is not the sole measure of reasonableness, the measure of success achieved is properly considered a factor in the juvenile court's determination of whether an effort qualifies as reasonable.'"  (*In re D.H.* (2014) 230 Cal.App.4th 807, 816.)

"'The standard of review of a dispositional order on appeal is the substantial evidence test, "bearing in mind the heightened burden of proof."'"  (*In re Madison S.* (2017) 15 Cal.App.5th 308, 325.)  "[O]nly one valid ground is necessary to support a juvenile court's decision to bypass a parent for reunification services . . . ."  (*Id*. at p. 324; see *In re Lana S.*, *supra*, 207 Cal.App.4th at p. 108 [evidence of parent's lengthy history of drug abuse sufficient to deny parent reunification services].)

Here, substantial evidence supported the juvenile court's finding that substance abuse was one of the issues that led to the removal of minor's siblings.  The detention report reflected that mother's prior dependency case regarding minor's siblings, T.T. and P.T., "revealed that the mother has a problem with abusing prescription medication . . .

11

and untreated mental health problems."[8]  The social worker provided the court with a copy of the petition, which reflects that one of the initial bases for detention of minor's siblings was that mother had abused controlled substances, including marijuana and prescription medication.  Indeed, the detention report in that case reflects that when asked by the social worker, mother produced a bag of "numerous pills, 'not in any sort of labeled, child proof container.'"[9]  (*DPSS v. C.T.*, *supra*, E057720.)  Mother "said she knew what each pill was, that she did not need all them, but kept them 'in case someone else might need them.'"  (*Ibid*.)  P.T. told the social worker that "mother had a lot of pills."  (*Ibid*.)  Although the petition reflects the striking of the allegation,[10] the fact that mother's drug use was one of the reasons the department initially took minor's siblings into protective custody necessarily means it was one of the issues that lead to the removal of siblings.

Nonetheless, even assuming insufficient evidence supported the finding that mother's drug issues led to the removal of minor's siblings, the court's finding that her

---

[8]  Mother did not object to the admission of the report or any of its contents below.  Likewise, mother never objected at disposition to the assertion that her services and parental rights had been terminated as to minor's siblings based, in part, on her abuse of controlled substances.

[9]  On the court's own motion, we take judicial notice of our nonpublished opinion in *DPSS v. C.T.* (Sept. 9, 2013, E057720), from mother's appeal of the termination of her parental rights to T.T.  (Evid. Code, §§ 452, subd. (d), 459.)

[10]  We note that the minute order does not reflect that the allegation was actually stricken; rather, it reflects that "the allegation(s) as set forth in the 1st amended original dependency petition . . . are true."

mental health issues led to the removal was, alone, sufficient to justify application of the bypass provisions. (*In re Madison S.* (2017) 15 Cal.App.5th 308, 324 ["[O]nly one valid ground is necessary to support a juvenile court's decision to bypass a parent for reunification services . . . ."].) Here, the petition in minor's siblings' case reflects an allegation that "mother, by her own report, has a mental health diagnosis of Bipolar Disorder" (b-3); that allegation was not crossed out or stricken. The detention report reflects mother "told the social worker that she had been diagnosed with bipolar disorder when she was 23." (*DPSS v. C.T.*, *supra*, E057720.) Mother testified at the contested jurisdiction and disposition hearing in this case that she had been diagnosed with bipolar disorder for which she was regularly taking medication 10 years earlier. Mother does not contest in this petition that mental health problems were one of the issues leading to minor's siblings' removal. Thus, sufficient evidence supports the finding that mother's mental health issues were one of the problems leading to the removal of minor's siblings which, alone, supports a basis for denying her reunification services pursuant to the bypass provisions.

Substantial evidence also supported the court's finding that mother had failed to make a reasonable effort to treat her mental health and drug abuse issues. Mother reported that she was prescribed psychotropic medications approximately 10 years earlier, but she did not know how to use them. She said she stopped taking them because she did not like the way they made her feel. Mother testified that she had been diagnosed with bipolar disorder for which she was regularly taking medication 10 years earlier, but

13

that the medication was too strong for her. She also said she had not taken any prescription medication since then until this year. The department was unable to confirm with mother's current doctor that she was receiving any treatment for her condition. Thus, sufficient evidence supports the court's finding that mother had let her bipolar disorder go untreated since her prior dependency case.

With respect to mother's drug abuse, she initially denied any use of illicit or prescription drugs. However, she tested positive for opiates, benzodiazepines, and marijuana at the time the department first became involved in the instant case, and she admitted taking unknown pills, which resulted in her overdose. Mother later tested positive for marijuana on May 1 and June 15, 2020. Only on June 24 did she obtain a prescription for marijuana.

On July 31, 2020, mother again tested positive for benzodiazepines and for methamphetamine on December 4 and 8. Mother failed to show for tests on May 4, June 11, November 2, 4, December 10, and 22. (*In re Noah G.* (2016) 247 Cal.App.4th 1292, 1303-1304 ["Under these circumstances, the juvenile court could reasonably infer the mother's failure to comply with a court-ordered drug test may be considered as a positive test."].) Thus, substantial evidence supported the court's finding that mother failed to make reasonable efforts to treat both her mental health and drug abuse issues; therefore, sufficient evidence supports the court's order denying mother reunification services pursuant to the bypass provisions of section 361.5, subdivision (b)(10) and (b)(11).

DISPOSITION

The petition is denied.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER _____
J.

We concur:

RAMIREZ _____
P. J.

FIELDS _____
J.