Filed 7/26/23  In re N.W. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re N.W., a Person Coming Under the Juvenile Court Law. | |
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>C.A. et al.,<br><br>Defendants and Respondents. | F085724<br><br>(Super. Ct. No. JVDP-20-000027)<br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Stanislaus County.  Annette Rees, Judge.

Thomas E. Boze, County Counsel and Lindy Giacopuzzirotz, Deputy County Counsel, for Plaintiff and Appellant.

Aida Aslanian, under appointment by the Court of Appeal, for Defendant and Respondent E.W.

Gregory M. Chappel, under appointment by the Court of Appeal, for Defendant and Respondent C.A.

Jamie A. Moran, under appointment by the Court of Appeal, for Minor.

-ooOoo-

This juvenile dependency appeal concerns the postpermanency stage of the proceedings. At a Welfare and Institutions Code[1] section 366.26 hearing held on behalf of minor, N.W., a permanent plan of legal guardianship was selected, with the juvenile court retaining dependency jurisdiction.

The Stanislaus County Community Services Agency (agency) subsequently filed a section 388 petition requesting the court terminate the guardianship because the guardians had indicated to the agency a desire for the guardianship to be terminated. The record indicated N.W. had displayed difficult behaviors and gone AWOL from the guardians' home, and the guardians felt she needed a higher level of care.

At a combined section 388/section 366.3 hearing, N.W.'s whereabouts were unknown; N.W.'s counsel objected to the termination of the guardianship in N.W.'s absence because she could not present the position of N.W., who was then 12 years old, and took the position that while N.W. was AWOL, the only order the juvenile court could make was to issue a protective custody warrant. The agency took the position that the juvenile court could not properly issue a protective custody warrant without terminating the guardianship.

The juvenile court denied the agency's section 388 petition and ordered the agency to prepare a protective custody warrant specifying, at the agency's request, that if apprehended, N.W. was to return to the legal guardians' home rather than the agency, who could then turn N.W. over to the agency, with the agency filing a section 387 petition to remove N.W. from the guardians. The court reasoned it could not grant the section 388 petition nor properly evaluate N.W.'s placement without hearing from N.W. or gathering more information from the guardians, who were not present at the time of the juvenile court's ruling.

---

**1** All further undesignated statutory references are to the Welfare and Institutions Code.

2.

The agency appealed from the section 388 denial and the section 366.3 findings and orders, contending that the juvenile court (1) abrogated its duties by declining to evaluate N.W.'s placement and terminate the guardianship in light of the evidence before it; (2) the court abused its discretion in denying the agency's section 388 petition; and (3) the court erred by ordering a protective custody warrant to be prepared without terminating the guardianship. N.W., through counsel, and her parents—E.W. and C.A.—all filed responsive briefs disputing the agency's claims.[2]

We agree in part with the agency's contentions. We agree N.W.'s absence was not a definitive barrier to considering and/or granting the section 388 petition, but we do not agree with the agency's proposed remedy of reversal with directions to grant the petition and terminate the guardianship. Based on the record, we find the juvenile court must decide in the first instance whether the agency met their burden to establish the section 388 petition should be granted without the presumption it must not do so in N.W.'s absence. Thus, we reverse the order denying the section 388 petition and remand for a new hearing on the agency's section 388 petition and appropriate further proceedings. The protective custody warrant issued by the court shall remain in effect.

## FACTUAL AND PROCEDURAL BACKGROUND

The underlying dependency proceedings were initiated in Santa Clara County. Dependency jurisdiction was taken over then nine-year-old N.W. and her two siblings on February 4, 2019, under section 300, subdivisions (b) (failure to protect) and (c) (serious emotional damage). The children were removed from the physical custody of mother, and she, as well as father who was incarcerated at the time, were ordered to participate in family reunification services.

---

[2]    Each respondent joins in all arguments advanced by all other respondents. For the sake of clarity, when we refer to a respondent's specific argument, we attribute it to the party that raised the argument in their brief.

3.

Upon initial removal, N.W. and her siblings were placed with their maternal uncle. In February 2019, N.W. and one of her siblings, D.W. were placed in protective custody due to the maternal uncle's inability to meet the children's challenging behaviors. In March 2019, N.W. and D.W. were placed with paternal relatives. Due to N.W. and D.W.'s challenging behaviors, they again needed new placement.

In April 2019, N.W. and D.W. were placed with non-relative extended family members S.E. and E.E., who the children referred to as their grandparents. S.E. and E.E. were longtime licensed foster parents who cared for mother when she was a minor. In December 2019, D.W. was moved to another placement, and N.W.'s other sibling, M.W. was placed with her in the home of S.E. and E.E.

On January 7, 2020, the Santa Clara County juvenile court ordered the matter transferred to Stanislaus County. The Stanislaus County juvenile court accepted transfer on February 4, 2020, and on March 10, 2020, ordered N.W. and her siblings continue as dependents of the court and mother to continue receiving reunification services.

On September 15, 2020, the juvenile court terminated mother's services and found there was a compelling reason for determining that a section 366.26 hearing would not be in the best interest of N.W.

In August 2021, N.W.'s care providers indicated they wanted to be legal guardians of N.W., and the court set a section 366.26 hearing.

At the section 366.26 hearing conducted on January 4, 2022, the court established a guardianship of N.W. and appointed the care providers as her legal guardians and retained dependency jurisdiction over N.W. The section 366.26 report recommended dependency jurisdiction be retained because N.W. "continued to struggle with behavioral issues, and has been reluctant to engage fully in therapy to work through her anger outburst." The report further stated, "The guardians would like to provide [N.W.] with the same permanency, but would like the agency to stay on to continue to support [N.W.] as she makes the progression towards full stability." At the section 366.26 hearing, the

4.

court also established guardianship of M.W., appointing the same care providers as guardians, without dependency jurisdiction. The agency had recommended dependency jurisdiction be dismissed as to M.W. because he was "stable."

A "CONSENT OF PROPOSED GUARDIAN" form signed by E.E. and S.E. and Letters of Guardianship were filed on January 5, 2022.

In the agency's section 366.3 status review report dated June 15, 2022, the recommendation was for N.W. to continue in her plan of legal guardianship with dependency. N.W. was in good physical health but was reported to have a hard time staying focused in school. In April 2022, she was caught vaping in the bathroom but had not had any incidents since. She performed well academically with A's and B's. She was participating in mental health services weekly and was reported to be doing well. She was taking ADHD medication as well as melatonin for sleep, with no concerns reported. She was visiting consistently with mother. The report further indicated N.W. presented as "a very capable young lady who is able to perform independent living skills appropriate for her age." She was reported as having a strong relationship with her guardians, "who she is typically able to talk to[] after calming down." It was further reported she played with friends in the neighborhood and "continues to work on improving her behavior and when she feels overwhelmed, she tries to apply self-regulation; however [N.W.] needs to continue to be mindful how her outburst behaviors impact others." It was recommended dependency jurisdiction be continued as N.W. "continued to struggle with behavioral issues, and has been reluctant to engage fully in therapy to work through her anger outburst." It was reported the guardians were still willing to provide N.W. with permanency but continued to want the agency's support "as [N.W.] makes the progression towards full stability."

At the section 366.3 and psychotropic medication review hearing conducted on June 28, 2022, the juvenile court found N.W.'s prescribed medication was "working fine" and was "appropriate at this time." On behalf of N.W., her counsel stated she had spoken

with N.W. and the guardians, and "[t]he guardian, at some point in the future, would like the dependency dismissed, but would like [N.W.] to participate in services and commit to improving her behaviors. She's still having some pretty alarming behaviors. She's AWOLing on a regular basis; coming back quickly but leaving the home, and cussing and damaging property … at the caregiver's home. And so the caregiver wants to see some sort of improvement before agreeing to have the dependency dismissed, but she is committed to being with [N.W.] until that happens." The court noted N.W.'s behaviors, particularly vaping at school were "concerning" but expressed hope that her behaviors would improve. N.W.'s counsel further noted that it seemed N.W.'s behaviors might be linked to visits with mother and that she was upset about not being able to live with mother. The court confirmed that N.W. was participating in therapy to help her cope with this issue. The court approved of the agency's recommendations and ordered N.W.'s permanent plan was to continue in the guardianship with her current guardians.

On November 3, 2022, the agency filed a section 388 petition requesting the court set aside N.W.'s current legal guardianship, establish a permanent plan of placement with a fit and willing relative with continued dependency jurisdiction, dismiss the guardian S.E. as a party from the proceedings, and order N.W. placed under the supervision of the agency. In support of the petition, the agency alleged that "[o]n August 16, 2022, the legal guardian indicated a desire for the guardianship to be terminated." As to why the request would be in the best interest of N.W., the petition alleged, "The minor would have the opportunity to be in placement with a family that adequately meets the minor's needs since the minor expressed that she required a high level of care." Attached to the petition were e-mails representing the other parties' positions. N.W.'s counsel wrote, "At this time, I cannot state a position because my client is AWOL and I would need to consult with her first due to her age. I do not believe that any order terminating a guardianship should be made while the subject of the court's jurisdiction ([N.W.]) is AWOL." Father's counsel joined in minor's counsel's position.

6.

In the status review report the agency prepared for the next section 366.3 hearing dated November 30, 2022, it was reported N.W. went AWOL from placement on October 16, 2022, and remained so as of date of the report.[3] The agency's recommendation was for the legal guardianship to be vacated and for N.W. to continue in foster care with a permanent plan of placement with a fit and willing relative. The report indicated the guardian stated she no longer wanted to be N.W.'s legal guardian because "she feels that [N.W.'s] behaviors continue to escalate and at this time she requires a higher level of care." The agency also requested the court to issue a protective custody warrant as the legal guardianship would be terminated.

On the date set for the section 366.3 hearing and an evidentiary hearing on the agency's section 388 petition, December 12, 2022, the court described an off-the-record discussion regarding the case. The court noted N.W. remained AWOL and her whereabouts were unknown. The court expressed concern there was no protective custody warrant outstanding and "[t]here is nothing in the system for law enforcement to be able to take her into custody and turn her over to CPS." The court further explained the agency's "position is that they're not able to ask for a protective custody warrant while the guardianship exists," and minor's counsel "is objecting to the termination of the guardianship." The court indicated the matter would be trailed "as the Court wants to know what the authority is for the Agency's position that I cannot sign a protective custody warrant for this child, who is under the jurisdiction of this court."

The court asked the guardians, who were present, if they were still requesting the guardianship be terminated, to which S.E. responded, "Yes." S.E. asked if they could participate remotely at the trailed hearing, to which the court stated they could and minor's counsel represented she would e-mail the guardians the link.

---

[3]    In mother's brief, mother's appellate counsel indicated he was informed by mother's trial counsel that N.W. remained AWOL as of April 5, 2023.

At the trailed hearing conducted on December 15, 2022, the parties argued their positions on the issue of whether termination of the guardianship would be required before the court could issue a protective custody warrant for N.W. while she was AWOL. Counsel for the agency requested the court terminate the guardianship, arguing the court could do so even though N.W. was AWOL, and issue a protective custody warrant directing law enforcement to take N.W., if apprehended, to the agency. Counsel for N.W. argued the court did not have authority to make any orders other than issuing a protective custody warrant. She further argued that because N.W. was 12 years old, she had the right to have her feelings about the guardianship being terminated put before the court, and "without her here, without me being able to talk to her to get her position, I can't state that [N.W.] is in favor of the guardianship dissolving or not. She would also have the right to set it for a contested hearing if those were her wishes." Counsel for both parents agreed with N.W.'s counsel.

In ruling, the court noted the case *In re Baby Boy M.* (2006) 141 Cal.App.4th 588 (*Baby Boy M.*) was the "most dispositive" case of those cited. The court reasoned that it did not see the present case "as being different from any of our other dependency youth going AWOL, whether it is from an STRTP or a foster care placement, where the Court does, as you cited, have the power to issue a protective custody warrant, and once jurisdiction and disposition has been established on a case, has the duty to continue to act in the youth's best interests and in their supervision and their protection and safety." The court went on to say it "[could] not assess the current value of a placement or appropriateness of a placement without knowing the circumstances, which we won't know until [N.W.] is apprehended on her protective custody warrant. And I don't see a guardianship being in place as being a barrier to law enforcement encountering [N.W.], arresting her on the protective custody warrant, and immediately notifying CPS, who is going to take custody of her and make an appropriate placement decision, at that point." The court continued, "I also don't have the guardian[s] here. I understand their position

8.

is laid out in the 388, but they are not present or providing a statement as to what their feelings might be when [N.W.] is apprehended, when she's apprehended and what their situation is, and understanding their reasons in asking to terminate other than the AWOL, which isn't really set out in the 388."

The court then stated it intended to issue a protective custody warrant, set a runaway review date and "then set a further post-permanency review date for [N.W.'s] continued safety and in her best interests." The court denied the section 388 petition and ordered the agency to provide a protective custody warrant for it to sign.

Counsel for the agency then asked the court if it was going to be making section 366.3 findings to which the court responded, "And how do I make those findings without knowing anything about [N.W.] other than her status when she left?" Counsel for the agency responded, "normally what we would have the Court do is make the orders the Court can make for funding purposes. So, at this point, the placement is not going to be funded anymore, and we are going to have some IV-E problems going forward now, which is why we proceeded the way we have when asking the Court to make runaway findings, which … involves specific language to meet the requirements of IV-E but also kind of interlineated that we don't have all the information." In response, the court made the following "runaway findings": that N.W. had run away from the guardianship, an out-of-home placement continues to be necessary and her placement was necessary and appropriate, that the case plan was complied with and appropriate. The court noted "it doesn't sound like I'm making placement findings, but if you are saying that my finding that the child's placement was necessary and appropriate, therefore, triggers that, that is something that we will have to address."

Counsel for the agency added that the minute order should state "should the youth be located, the youth should be returned to the legal guardians." Counsel went on to state that once N.W. was returned to the legal guardians, they could relinquish her to the agency, allowing them to file a section 387 petition. Counsel further stated she thought it

was "very convoluted to do it this way, but I'm really concerned for liability on my client's end if a kid is dropped off and we do not have custody orders for that child." The court stated it can be clarified on the minute order that "when the child is … picked up on the protective custody warrant, she is to be taken to the legal guardians, who may relinquish custody to [the agency] … I mean, at that point, I don't know that when she's picked up and returned to the guardians, they may not have changed their mind."

Counsel for the agency stated once N.W. was to be apprehended and returned to the legal guardians, the agency would "have to file the [section] 387 petition, because, at that point, it's almost a [section] 300(g) equivalent." The court responded, "All right. And the Agency would be ordered to file the [section] 387 petition forthwith."

## DISCUSSION

### I. The Juvenile Court's Denial of the Agency's Request to Terminate the Legal Guardianship

Recognizing the issues presented in this appeal are interrelated, we begin our analysis by addressing whether the court erred by denying the section 388 petition requesting the court terminate the guardianship. In addressing this issue, we consider the agency's separately briefed contention the court "abrogated" its duties in how it conducted the combined hearing, as well as the issues raised by all parties regarding the effect on the proceedings of N.W. being AWOL.

For the reasons we will set forth, we conclude the juvenile court erred in part by denying the section 388 petition. First, as we will explain, under the circumstances of the present case, the court was not precluded from considering the merits of the petition just because N.W. was AWOL, and we reject respondents' arguments to the contrary. Thus, we conclude it was an abuse of discretion to the extent the court relied on N.W.'s absence to deny the petition. We do not, however, find reversal of the order with directions to the juvenile court to grant the petition, as requested by the agency on appeal, to be an appropriate remedy. As we will explain, on one hand, the juvenile court did not appear to

10.

reach the merits of the agency's petition; on the other, the juvenile court made comments that signal to us, irrespective of N.W.'s absence, that could be construed as the court not being convinced by a preponderance of the evidence that the agency had met its burden in establishing the section 388 petition should be granted. We conclude based on the somewhat unclear record, the best remedy is to reverse the order denying the section 388 petition, and remand for a new hearing on the petition, with directions to the juvenile court to consider the merits of the petition, without relying on the fact that N.W. is AWOL as a sole basis for denial.

Under section 388, subdivision (a), a party may petition the juvenile court to change, modify or set aside a previous court order. The petitioning party has the burden of showing, by a preponderance of the evidence, there is a change of circumstances or new evidence, and the proposed modification is in the child's best interest. (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806.)

A section 388 petition is the proper means by which a party must request termination of a legal guardianship established by the juvenile court. (Cal. Rules of Court, rule 5.740(d).) Before the hearing on the petition, the agency shall prepare a report that includes an evaluation of whether the child could safely remain in, or be returned to, the legal guardian's home without terminating the guardianship if services were provided. (§ 366.3, subd. (b)(2).) If the petition is granted, the court may order that a new plan be developed to provide stability for the minor. (§ 366.3, subd. (b)(2); Cal. Rules of Court, rule 5.740(d)(4).)

Ruling on a section 388 petition is " 'committed to the sound discretion of the juvenile court, and the trial court's ruling should not be disturbed on appeal unless an abuse of discretion is clearly established.' " (*In re A.R.* (2015) 235 Cal.App.4th 1102, 1116–1117.) We look to whether the juvenile court " ' "exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing

court has no authority to substitute its decision for that of the trial court." ' " (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318–319.)

Here, the juvenile court appeared to rely on two major factors in denying the section 388 petition:  (1) N.W. was AWOL and there was no further information about her current circumstances or her position on termination of the guardianship, and (2) the legal guardians were not present for the court to ascertain "as to what their feelings might be when [N.W.] is apprehended, when she's apprehended and what their situation is, and understanding their reasons in asking to terminate other than the AWOL, which isn't really set out in the 388."  Notably, the court did not make express findings as to whether the agency had established changed circumstances or that the requested order was in the best interest of N.W., and it stated it intended not to consider terminating the guardianship until N.W. was found.

We first address the effect of N.W. being AWOL on the proceedings, particularly the narrow issue of whether the court could consider and/or grant the section 388 petition in light of the information the legal guardians had requested the guardianship be terminated.  We agree with the agency under the circumstances of the present case, N.W.'s absence was not a definitive barrier to the court granting the petition.  In light of the specific reason for the request for termination—that the legal guardians were no longer willing to have the guardianship in place—N.W.'s personal position was of low probative value and not necessary for the court to make an order in her best interest with regard to the narrow issue of the guardianship.

We reject N.W.'s contention that granting the section 388 petition in her absence would have violated her right to due process.  Specifically, N.W. contends the record does not demonstrate she had actual notice of the hearing and was not advised of her right to confront and cross-examine witnesses.

While we recognize N.W. had a right to be present at the hearing under the circumstances of this case (§ 349), we do not find N.W. has persuaded us that the court

12.

would have erred by proceeding in her absence. There is no evidence to suggest N.W.'s absence from the guardians' home was not voluntary as the record suggests N.W. had been frequently going AWOL for shorter periods of time from the legal guardians' home. By absenting herself from the home and not making contact with them, her parents, her attorney, or the agency, the only reasonable conclusion is that she had voluntarily chosen not to be present at any hearings that may occur in her absence.

N.W. provides no authority that actual notice was required to protect her rights. N.W. was served by mail at her last known address (§ 295; Cal. Rules of Court, rule 5.740(d)(2)), the court found the agency had made reasonable efforts to locate N.W., N.W. was represented by counsel, and no party expressly raised the issue of service of notice. Further, we do not find the fact that N.W. was not advised of her right to present evidence and to cross-examine witnesses rises to the level of a due process violation, as N.W. was represented by counsel at the hearing and had the opportunity to seek to present evidence or cross-examine the social worker.

Respondents cite a number of cases to support the argument that, without N.W.'s presence and/or position, the court did not have sufficient information to grant the section 388 petition and therefore acted properly. First, the parents, as did the juvenile court, rely on *Baby Boy M.*, *supra*, 141 Cal.App.4th 588. In *Baby Boy M.*, the mother of an infant child appealed juvenile court orders declaring the minor, whose whereabouts were unknown, a dependent child, denying the mother reunification services, identifying long-term foster care as the minor's permanent plan, and ordering permanent placement services for the minor if he were to ever be found. (*Id*. at p. 591.) While the appellate court found the juvenile court lacked subject matter jurisdiction to make custody determinations regarding the minor, it also noted the court should not have conducted the jurisdiction and disposition hearing until the minor was found and reversed all orders remanding the matter for periodic review hearings as required by law. (*Ibid*.) It was believed that the minor was out of state with his father. (*Id*. at p. 599.) The appellate

court reasoned that it "lack[ed] any meaningful information concerning [the minor]" and therefore "prudential considerations independent of the jurisdictional analysis mandate that the juvenile court should have deferred holding the jurisdictional and dispositional hearings until [the minor was] located." (*Id*. at pp. 600–601.) The court noted, "The benefit of waiting until the child is present (or at least his location is known and his living situation assessed) is that it avoids decisionmaking by the court that may ultimately prove not in the child's best interests." (*Id*. at p. 601.) Finally, the appellate court found the juvenile court properly issued a protective custody warrant, as "it had no reason to do anything more." (*Ibid*.)

Mother also relies on *Katheryn S. v. Superior Court* (2000) 82 Cal.App.4th 958 (*Katheryn S.*) and *In re Claudia S.* (2005) 131 Cal.App.4th 236 (*Claudia S.*). In *Katheryn S.*, the juvenile court took jurisdiction over the minor and released her to her mother under a conditional release to intensive supervision program (CRISP) agreement, and the mother absconded with the minor. (*Katheryn S.*, *supra*, at pp. 961–962.) The juvenile court relieved mother's counsel because mother was absent from the proceedings and continued to hold hearings while the mother and minor's whereabouts were unknown including ordering reunification services provided and subsequently terminating services and setting a section 366.26 hearing. (*Id*. at p. 962.) After the mother and minor were located out of state and the mother was in custody as a result of the juvenile court's warrant, the section 366.26 hearing was conducted, at which the social worker informed the court they did not have time to assess the nature or quality of the parent-child relationship, had not spoken to the minor about adoption, and thought it would be inappropriate to do so since the child had been in the mother's care for the prior three years. (*Id*. at pp. 962–963.) The court proceeded with the hearing, ordering parental rights terminated and adoption as the minor's permanent plan. (*Id*. at p. 963.) The appellate court held it was error to relieve the mother's counsel and make the orders it did in the mother's absence. (*Id*. at pp. 963–964.) The appellate court noted that despite the

14.

mother's actions, the juvenile court did not act in the minor's best interest as "orders were eventually made by the court—orders that doubtless would affect [the minor] for the rest of her life—at a time when the person [the minor] was most attached to and dependent upon was absent outside the geographic jurisdiction of the court and unrepresented by legal counsel. Not only was this unfair to [the mother], it put [the minor's] welfare at unnecessary risk." (*Id.* at p. 974.) The appellate court concluded that under the "peculiar circumstances" presented by the case before it, "the juvenile court's decision to proceed with a section 366.26 hearing in [the mother's] absence or, at least, without [the mother] being represented by counsel, was improvident—especially considering the social worker's and counsel's request that the matter be continued so that a proper assessment of the situation might be completed." (*Id*. at p. 975.)

In *Claudia S.*, *supra*, 131 Cal.App.4th 236, the mother took the minors out of the country knowing the child welfare agency intended to file dependency petitions. (*Id.* at p. 241.) The juvenile court conducted detention, jurisdiction, disposition, 6- and 12-month status review hearings in their absence, as well as the absence of the presumed father, and without appointing counsel on behalf of the parents. (*Ibid*.) The appellate court reversed all orders issued after the detention hearing and remanded the matter for a new jurisdiction hearing "on the ground that the absence of the family and counsel under the unique circumstances of this case rendered the proceedings fundamentally unfair." (*Id*. at p. 242.)

These cases provide little by way of analogy to the present case. In *Baby Boy M.*, it was believed the minor was out of state with his father; the minor's living situation was *directly related* to the issues of jurisdiction and disposition. That is, had the minor been safe with his father and not at risk, jurisdictional and dispositional orders would not be in the minor's best interest because he would be safely with a parent. The issue before the juvenile court in the present case presented much different considerations. Because the reason for the request was that the guardians were representing they might be no longer

willing to care for the child, where N.W. was or whether she was currently safe or at risk was not relevant to the narrow issue of whether the legal guardianship should be terminated. Rather, depending on the situation, declining to terminate a legal guardianship in a minor's absence could be detrimental to the child. We note our conclusion would without a doubt be different if the juvenile court was being asked to make orders regarding the retention or dismissal of dependency jurisdiction, but that was not the case here. *Katheryn S.* and *Claudia S.* are similarly inapposite. Both cases are like *Baby Boy M.* in that the current circumstances of the children were directly related to the orders being made, and as we have stated, a request to terminate a guardianship where the guardians are no longer willing to care for the child is not analogous. Both cases are further distinguishable because they had the additional aspect of the court making a series of orders affecting parties without representation of counsel.

We conclude that, to the extent the court denied the petition on the grounds that N.W. was AWOL, it abused its discretion. We note our conclusion is limited to the particular facts of this case. This does not end our analysis, however, as the court also expressed it wanted to further ascertain the legal guardians' positions, including the reasons they were seeking to terminate the guardianship. Implicit in these comments was the inference that the information the agency presented may not have satisfied the court as to whether the section 388 petition should be granted. At the same time, it is not clear to us the juvenile court considered the merits of the petition; as we have stated, it did not make express findings and suggested it would not consider terminating the guardianship until N.W. was found.

We cannot ignore the court's comments. It is within the juvenile court's purview to determine whether the agency met their burden as the petitioning party, and we must not substitute our judgment for the juvenile court's if the juvenile court's is not unreasonable. As the agency points out, the evidence before the juvenile court was (1) "the verified petition of the social worker stating the guardians requested that the

16.

guardianship be terminated"; (2) the section 366.3 report, "which stated that the legal guardian 'stated that she no longer wants to be [N.W.'s] legal guardian because she feels that [N.W.]'s behaviors continue to escalate and at this time she requires a higher level of care' "; and (3) "the, admittedly, unsworn statement of the guardians in response to the Court's own question, three days prior to the court ruling, that they continued to want the guardianship terminated." We cannot say this evidence was so overwhelming as to compel the juvenile court to grant the petition thus rendering it an abuse of discretion not to find the agency's burden had been met. Had the juvenile court intended its comments to be a ruling on the petition's merits, we cannot say such a ruling was unreasonable. Like the juvenile court pointed out, the reasons the legal guardians requested the guardianship be terminated were not fleshed out in the section 388 petition or the section 366.3 report, nor were the legal guardians present for the juvenile court to make further examination of them.

We reject the agency's contention that the court's comments on the guardians' position, particularly about whether the guardians would change their minds once N.W. was returned, was speculation and therefore not a basis to deny the petition. We interpret the court's comments as it expressing it wanted a more complete picture as to the reasons the guardians wanted the guardianship terminated, which was relevant to whether the agency had met their burden in establishing the factors under section 388.

In conclusion, though we do find the court abused its discretion by relying on the fact that N.W. was AWOL in denying the petition, for the reasons we have stated, we are reluctant to reverse the order denying the petition and direct the juvenile court to terminate the guardianship as the agency requests. Based on the record before us, we find the most appropriate remedy is to reverse the order denying the agency's section 388 petition and remand for a new hearing. We find the determination of whether the agency met its burden must be made in the first instance by the juvenile court, keeping in mind that N.W.'s absence is not a definitive barrier to deciding.

We appreciate the agency's position that in light of the guardians' desire to have the guardianship terminated, the only reasonable order to make to protect N.W.'s best interests is to terminate the guardianship. We recognize placement with care providers who are unable or unwilling to provide basic care is not in any child's best interest. We also recognize that maintaining the guardianship while N.W. was AWOL may have prevented the agency from "engag[ing] in pre-planning and exploration of possible appropriate placements for [N.W.] when she is located." We also recognize the agency's concern that guardianship is a voluntary act, and it is a legal guardian's prerogative to withdraw consent. These are all considerations the juvenile court must weigh as it considers the section 388 petition upon remand.

## III. The Court's Issuance of the Protective Custody Warrant

We turn to the agency's contention the court may not properly issue a protective custody warrant while the legal guardianship remains intact. While this issue may very well become moot if the juvenile court, upon remand, grants the agency's petition, we will analyze the issue for guidance for the court and parties. Analysis of this issue depends on interpretation of section 340.

"We review questions of statutory construction de novo." (*In re B.H.* (2016) 243 Cal.App.4th 729, 736.) We first look to the words of the statute "to determine legislative intent and to fulfill the purpose of the law." (*Ibid*.) " 'If the statutory language is unambiguous, we presume the Legislature meant what it said, and the plain meaning of the statute controls.' " (*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1214.) We also "interpret the language in the context of the entire statute and the overarching statutory scheme, and we give significance to every word, phrase, sentence and part of an act in discerning the legislative purpose." (*In re B.H.*, *supra*, at p. 736.) "We must also give the statute a reasonable and commonsense interpretation consistent with the apparent purpose and intent of the lawmakers and resulting in wise policy rather than mischief or absurdity." (*Ibid*.) "[I]f the statutory language may reasonably be given

more than one interpretation, courts may employ various extrinsic aids, including a consideration of the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute." (*Conservatorship of Whitley*, *supra*, at p. 1214.)

Section 340, subdivision (a) reads:

> "(a) Whenever a petition has been filed in the juvenile court alleging that a minor comes within Section 300 and praying for a hearing on that petition, or whenever any subsequent petition has been filed praying for a hearing in the matter of the minor and it appears to the court that the circumstances of his or her home environment may endanger the health, person, or welfare of the minor, *or whenever a dependent minor has run away from his or her court-ordered placement*, a protective custody warrant may be issued immediately for the minor." (Italics added.)

We find the plain language of the statute is unambiguous, contrary to the agency's suggestion. It appears clear to us the juvenile court was within its authority to issue a protective custody warrant. Because the court had retained dependency jurisdiction over N.W., she was "a dependent minor [who] ha[d] run away from … her court-ordered placement," and the statute clearly confers authority to issue a protective custody warrant under that circumstance. We do not see any reason that this would not include a legal guardianship over which the juvenile court still maintained dependency jurisdiction.

The agency contends that this is an inappropriate reading because subdivision (c) of section 340 provides, "Any child taken into protective custody pursuant to this section shall immediately be delivered to *the social worker* who shall investigate, pursuant to Section 309, the facts and circumstances of the child and the facts surrounding the child being taken into custody and attempt to maintain the child with the child's family through the provision of services." (Italics added.) The agency contends applying subdivision (a) of section 340 to legal guardianships renders subdivision (c) superfluous. They reason, as they did below, that the agency could not legally take custody over a minor in a legal guardianship.

19.

We disagree. If anything, section 340, subdivision (c) sets forth the proper procedure for warrants, including those issued for runaway dependents. Here, based on our reading of the plain language of the statute, the court could have properly directed law enforcement to release N.W. to the agency. The court only directed N.W. to be brought to the legal guardians at the agency's request, and the agency does not appear to be contending on appeal that this, specifically, was improper. We note that if, upon remand, the juvenile court denies the request to terminate the guardianship, and N.W. is subsequently taken to the legal guardians who in turn seek to relinquish N.W. to the agency because they are unwilling to care for her, the agency could arguably take temporary custody of N.W. pursuant to section 306 and file another request to terminate the guardianship.

The agency questions the propriety of a protective custody warrant being issued in a hypothetical situation where M.W., who was placed in a legal guardianship with the grandparents, were to run away. We note the circumstances between the children are distinguishable in that the juvenile court retained dependency jurisdiction over N.W., while it dismissed it as to M.W., and the present appeal does not present the issue of whether the court may issue a protective custody warrant on behalf of a nondependent child in a legal guardianship established in a juvenile dependency case.

We reject appellant's contention the court erred by issuing a protective custody warrant while the legal guardianship was in place.

### DISPOSITION

The order denying the agency's section 388 petition is reversed. The matter is remanded for a new hearing on the agency's section 388 petition requesting the court to terminate the guardianship and for appropriate further proceedings in light of the views expressed in this opinion and the then current circumstances of N.W. and the legal guardians. The protective custody warrant shall remain in effect. If the court grants the

20.

agency's section 388 petition, it shall issue a new protective custody warrant directing N.W. to be delivered to the agency, if necessary.

DE SANTOS, J.

WE CONCUR:

PEÑA, Acting P. J.

SMITH, J.