Filed 1/9/24  In re An.V.B. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re AN.V.B. et al., Persons Coming Under the Juvenile Court Law. | |
| FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> M.V., <br><br> Defendant and Appellant. | F085704 <br><br> (Super. Ct. Nos. 22CEJ300211-1 & 22CEJ300211-2) <br><br><br> **OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County.  Kim Nystrom-Geist, Judge.

Judith A. Carlson, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel C. Cederborg, County Counsel, and Lisa R. Flores, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

Juvenile dependency was taken over M.V. (father)'s two minor children due in part to sexual abuse perpetrated by him against his daughter, consisting of two instances of touching her breasts under her clothes. The juvenile court ordered both children removed from father and their mother, P.B.M. (mother), and declined to order father reunification services pursuant to Welfare and Institutions Code section 361.5, subdivision (b)(6)[1]—finding that the child or their sibling had been adjudicated a dependent under section 300 due to "severe sexual abuse" by the parent, and providing reunification services to the parent would not benefit the children.

Father appeals from the juvenile court's dispositional findings and orders. He contends the court erred by incorrectly interpreting section 361.5, subdivision (b)(6)(B) to include touching of the breasts within the definition of "severe sexual abuse." In the alternative, he asserts the factual findings under section 361.5, subdivision (b)(6) were supported by insufficient evidence.

We reverse the portion of the court's dispositional order denying father reunification services under section 361.5, subdivision (b)(6) and remand the matter with directions to the juvenile court to vacate the order and order father reunification services in the absence of other circumstances that would permit or require the court to deny services. In all other respects, the juvenile court's dispositional findings and orders are affirmed.

## RELEVANT LEGAL BACKGROUND

A court is generally required to order reunification services for a parent " 'whenever a child is removed' " from that parent's custody unless an enumerated statutory exception or "bypass" provision applies. (*In re Jayden M.* (2023) 93 Cal.App.5th 1261, 1271.) "Consonant with the general presumption in favor of

---

[1]    All further undesignated statutory references are to the Welfare and Institutions Code.

mandatory reunification services, the bypass provisions are 'narrow in scope' and reach situations where ' "the likelihood of reunification" ' is ' "so slim" ' due to a parent's past failures that 'expend[ing]' the [d]epartment's ' "scarce" ' resources on reunification services is likely to be 'fruitless,' or when 'attempts to facilitate reunification' would otherwise not 'serve and protect the child's interest.' " (*Ibid.*)

As pertinent here, section 361.5, subdivision (b)(6)(A) provides that reunification services need not be provided to a parent when the court finds by clear and convincing evidence "[t]hat the child has been adjudicated a dependent pursuant to any subdivision of Section 300 as a result of severe sexual abuse … to the child, a sibling, or a half sibling by a parent or guardian … and the court makes a factual finding that it would not benefit the child to pursue reunification services with the offending parent or guardian."

For the purpose of the subdivision, "[a] finding of severe sexual abuse … may be based on, but is not limited to, sexual intercourse, or stimulation involving genital-genital, oral-genital, anal-genital, or oral-anal contact, whether between the parent or guardian and the child or a sibling or half sibling of the child, or between the child or a sibling or half sibling of the child and another person or animal with the actual or implied consent of the parent or guardian; or the penetration or manipulation of the child's, sibling's, or half sibling's genital organs or rectum by any animate or inanimate object for the sexual gratification of the parent or guardian, or for the sexual gratification of another person with the actual or implied consent of the parent or guardian." (§ 361.5, subd. (b)(6)(B).)

In determining whether reunification services will benefit the child pursuant to section 361.5, subdivision (b)(6), the court shall consider any information it deems relevant, including the following factors: "(1) [t]he specific act or omission comprising the severe sexual abuse … inflicted on the child or the child's sibling or half sibling"; "(2) [t]he circumstances under which the abuse or harm was inflicted on the child or the child's sibling or half sibling"; "(3) [t]he severity of the emotional trauma suffered by the

3.

child or the child's sibling or half sibling"; "(4) [a]ny history of abuse of other children by the offending parent or guardian"; "(5) [t]he likelihood that the child may be safely returned to the care of the offending parent or guardian within 12 months with no continuing supervision"; and "(6) [w]hether or not the child desires to be reunified with the offending parent or guardian." (§ 361.5, subd. (i).)

The court shall not order reunification for a parent or guardian described in section 361.5, subdivision (b)(6) unless the court finds, by clear and convincing evidence, that reunification is in the best interest of the child. (§ 361.5, subd. (c)(2).)

## FACTUAL AND PROCEDURAL BACKGROUND

The family lived in a two-bedroom apartment. Mother, father, and 10-year-old An.V.B. slept in one room, and 12-year-old Al.V.B. slept in the other room with two other adult family members.

On July 4, 2022, An.V.B. disclosed to her pastor that one night in the middle of June of that year, when she was asleep in bed with her parents, father fondled her breasts under her clothes. Law enforcement was contacted; they arrested father and placed a section 300 hold on An.V.B. and Al.V.B. That day, the children were placed with a maternal relative.

Mother reported to the investigating social worker that An.V.B. had confided in her what had happened, but she did not know what to do and did not report the incident to law enforcement. The day after An.V.B.'s report, mother confronted father; he said he was under the influence of alcohol and methamphetamine and did not know what he was doing, and he later apologized to An.V.B. Mother later reported that An.V.B. usually slept in the middle of the bed, but on the day of the incident, because mother had observed father behaving strangely due to possible alcohol and drug use, she told An.V.B. to sleep on the bottom of the bed, away from the parents. Mother reported she did this because "she had seen shows like the Rosa de Guadalupe where 'things

4.

happen.' " Mother further reported father drank daily to the point of drunkenness and that there had been past domestic violence with father as the perpetrator years ago.

An.V.B. reported the incident lasted two to three minutes, and she felt traumatized and could not stop thinking about it since it happened. She had nightmares about it and was scared of father "doing it again." It happened once at night and once the next morning. When the social worker expressed to An.V.B. that she was concerned her mother failed to protect her, An.V.B. responded, "you're right about that." An.V.B. said she expressed to mother after the incident that she was uncomfortable with father in the home, and mother told her it would be fine. An.V.B. asked the social worker how long father would be in jail and said she would be ok if he was sent back to Mexico. She expressed she would like to have contact with father at least once a week to see how he was doing and that she respected him despite what he did to her.

Al.V.B. reported that father hit mother when he was four or five years old and was last aggressive toward mother about two weeks ago. He reported father called mother "estupida y puta (stupid and whore)." Al.V.B. said mother would not call the police because "she believes God can change him one day." Al.V.B. got emotional when speaking with the social worker; he stated he believed father could change "but that it would take him years to change and he needed to be out of the home." He believed father needed to be in a drug program. Al.V.B. stated he believed father took advantage of mother because she was sensitive, and this made Al.V.B. feel terrible. He wanted father to live in another state, but at the same time, he worried about him. When asked if he wanted to visit with father, he stated he did not know. When asked if he had one wish, he stated to "be with mom somewhere else safe and happy, and live happily with sister."

Father initially denied touching An.V.B. inappropriately. He also denied calling mother names and using any drugs. He admitted that he drank but denied doing so for the purpose of getting drunk. He did believe he had a problem, however, and stated he had been planning on starting AA meetings the day he got arrested.

On July 6, 2022, the Fresno County Department of Social Services (department) filed a petition on behalf of Al.V.B. and An.V.B. alleging they came within the juvenile court's jurisdiction pursuant to section 300, subdivision (b)(1) (failure to protect) and subdivision (d) (sexual abuse). The petition alleged father had sexually abused An.V.B. by touching her breasts under her clothing twice, once at night and once the next morning, and that Al.V.B. was at substantial risk of suffering sexual abuse by father. The petition further alleged mother had failed to protect the children from sexual abuse by father, as An.V.B. had reported the incident to her, and she did not contact law enforcement and continued to allow father in the home with the children. The petition also alleged father had a substance abuse problem with methamphetamine and alcohol, which negatively affected his ability to provide regular care and supervision to the children, as he was under the influence of the substances at the time he abused An.V.B.

The court ordered the children detained from the parents on July 11, 2022.

The department's jurisdiction/disposition report dated August 10, 2022, recommended: (1) the petition be found true and the children be determined to be described by section 300, subdivisions (b) and (d); (2) the children be adjudged dependents of the court and remain in foster care; (3) mother be ordered to participate in family reunification services; and (4) father be denied reunification services pursuant to section 361.5, subdivision (b)(6). The family had no family law or child welfare history, and as for criminal history, father had a prior misdemeanor domestic violence conviction from 2011. Mother had begun visiting with the children, but father had not because he was incarcerated, and the jail was not allowing minors to enter the jail at that time. The Family Reunification Services Initial Review Panel (FRSIRP) concluded the alleged conduct fit within the definition of severe sexual abuse as set forth in section 361.5, subdivision (b)(6).

The first day of the combined jurisdiction/disposition hearing was conducted on November 16, 2022. The social worker testified on behalf of the department. She

6.

testified mother had completed her parenting class, was participating in ongoing mental health services, and had completed five weeks of a sexual offender treatment program. The social worker testified father had not drug tested since being offered random drug testing. The social worker attempted to visit father when he was incarcerated but was unable to because he was in quarantine, and she had not contacted him since his release because she has no contact information for him. As such, she had been unable to speak to father personally about the sexual abuse allegations.

The social worker further testified the children had consistently stated they wished to return to mother's care. When asked about father, the children stated they needed more time to consider it. On September 6, 2022, An.V.B. asked if she could see or visit father. Since then, the social worker had asked her about visitation with father, and An.V.B. had responded that she would like to inquire more about it. In response, the social worker spoke to An.V.B.'s mental health services clinician, who reported that An.V.B. had reported "some emotional disturbance" around learning father was released from custody. The social worker "left it with the clinician to help her process that because this is a sensitive topic for [An.V.B.]" The social worker further explained that An.V.B. "doesn't really go into depth about it" with the social worker, but she knows through the clinician that An.V.B. is "back and forth in regards to wanting visitation and not wanting it."

An addendum report dated December 6, 2022, was filed between the first and second day of the jurisdiction/disposition hearing and reported additional information regarding father. Attached to the report was a minute order from father's criminal case related to the incident, which indicated father had been charged with a felony violation of Penal Code section 288, subdivision (a), lewd or lascivious act with a minor (count 1) and a misdemeanor violation of Penal Code section 243.4, subdivision (e)(1), sexual battery (count 2). On October 12, 2022, father pled nolo contendere to count 2, and the People moved to dismiss count 1 in light of the plea. Father was sentenced to three years

7.

of formal probation. On December 5, 2022, father's probation officer informed the social worker that father's probation conditions were to register as a sexual offender, drug test, enroll in and complete a sexual offender treatment program, and have no contact with An.V.B. pursuant to a criminal protective order granted on October 12, 2022, and set to expire on October 12, 2025. According to the probation officer, father had registered as a sexual offender, tested negative for substances four times in November but had not yet enrolled in his treatment program. The probation officer informed the social worker, "[Father] will be in violation of his probation and … face new charges if he contacts [An.V.B.] regardless of whether he is granted reunification services/visitation in the Family Court case."

The second day of the combined jurisdiction/disposition hearing was conducted on December 15, 2022. The parties stipulated that the juvenile court would receive a document containing An.V.B.'s answers to questions by father's counsel in lieu of live testimony. In the document, An.V.B. stated she loved and missed father and wanted to visit him. When asked why she wanted to visit father, she answered, "The only reason I want to visit him is because I don't think he's drinking anymore." An.V.B. explained she had seen father in court hearings via Zoom and his face did not look as red. She further stated she wanted to go back to living with father for the same reason. If she were never allowed to see father again, she would feel upset because it would be "different." She explained she "wouldn't be able to go out because sometimes my mom doesn't like taking me out. I wouldn't get to go anywhere like I did before."

Al.V.B. testified live in court on behalf of father outside of the parents' presence. Al.V.B. testified he loved and missed father. He "really" wanted to visit father and wanted to be returned to him. If he were never allowed to see father again, it would make him "feel really sad."

Father testified that he inappropriately touched An.V.B. "under the effects of alcohol and drugs" and that he did not know it was occurring at the time. When he was

confronted about it, he apologized to mother and An.V.B. and took responsibility for what happened. He acknowledged he had a substance abuse problem and had been attending alcoholics anonymous meetings since the day after he was released from custody and had just begun the sex offender treatment program. He was in compliance with his probation terms. He testified he was benefitting from meetings and was dealing well with his addiction and had stopped drinking and using drugs. He was willing to participate in any additional classes that might be ordered as part of reunification.

As to the section 361.5, subdivision (b)(6) bypass provision, counsel for the department argued that the sexual abuse was "severe" within the meaning of the statute because the statute "requires manipulation with inanimate object for gratification, and here there was fondling of the breast under clothes with the hand." Counsel for the department went on to argue that the children would not benefit from father receiving reunification services and further that services were not in the children's best interests.

Minors' counsel joined in the department's recommendations. As to the issue of bypassing father, minors' counsel argued the abuse was "severe" within the meaning of the statute because An.V.B. was "taken advantage of in a vulnerable state at night in bed." Minors' counsel added that father had the opportunity to think about what he had done in the interim between touching An.V.B. in the nighttime and again in the morning, and that father was unable to articulate anything regarding the sexual abuse in his testimony. Finally, minors' counsel argued that visits with An.V.B. would be detrimental but that they would not be objecting to therapeutic supervised visitation between father and Al.V.B.

Father's counsel submitted on the department's report as to the jurisdictional allegations. As to the issue of the bypass provision, father's counsel asserted the conduct did not rise to the level of severe sexual abuse as defined in section 361.5, subdivision (b)(6). Father's counsel stated that none of the enumerated acts in the statute were present in the case. Father's counsel argued if the court did find the conduct was

"severe," that father should nonetheless be ordered reunification services based on the circumstances of the touching, in that he did not know what he was doing, his remorse, his acceptance of the criminal consequences of his actions, his efforts to get sober, his enrollment in sex offender treatment, and the children's desire to reunify with him.

In response, counsel for the department noted "father's counsel provides no authority stating that the touching of the breast is not considered genitals for purposes of the [section 361.5, subdivision] (b)(6) bypass." The court asked counsel for the department to provide authority that a breast *was* considered a genital as it was not commonly referred to as such, to which counsel for the department stated, "I don't have that off the top of my head, Your Honor. I know that touching of the breast in prior cases has been considered severe sexual abuse. I can research that and provide that if Your Honor would like." The court responded, "I'm sure county counsel has case law in support of its position," to which counsel responded, "I don't have the name at this time."

Minors' counsel added it was their position "that the type of touching that occurs here falls within the section of the statute saying specifically that the touching 'is not limited to.' " Minors' counsel went on: "As [I] stated earlier, this is a particularly vulnerable victim, the biological daughter of the perpetrator, sleeping in bed at night while this happened and, again, not limited to touching just once, but touching the following morning. After a cooling-off period, so to speak, had occurred and father, yet again, decided to violate his daughter. So we would argue to the Court to consider this as part of the 'not limited to' portion of the statute where the [L]egislature allowed for additional touching—or additional violations beyond that that was specifically listed in that code section."

The court took the matter under submission and delivered its ruling on December 19, 2022. The court found all allegations in the petition proven true by clear and convincing evidence. As to whether the bypass provision set forth in section 361.5, subdivision (b)(6) applied, the court first addressed whether or not father's conduct

10.

resulted in "severe sexual abuse" of An.V.B. The trial court noted that while father took the position that "his conduct could not possibly be severe sexual abuse … [t]he [L]egislature has clearly left it for the trial court to determine as the statute indicates, but is not limited to, the father has offered no legal authority for his position, no case law that would support touching of breasts under clothing of a very young child is excluded or exempted from a finding of severe sexual abuse." The court found father's conduct "constitutes severe sexual abuse" for the following reasons:

> "It occurred twice, at night, again, after what would have been a cooling off or perhaps a sobering period for the father. He again did exactly the same thing in the morning. [An.V.B.] is only ten. She was required by the parents to stay in the bed with them, offered no alternative place to sleep, not even a blanket where she could [have] slept safely. Both parents ensured that she was immediately accessible to the parents, significantly to the father. The mother was aware that the father was using drugs. She was aware that he was drunk. She had reason to believe—more than reason to believe that he was selling drugs.

> "[An.V.B.] was traumatized. That is how she described how she felt. She could not stop thinking about the father's conduct. She thought about it all the time. She was having nightmares. However much the father wishes to excuse or justify his conduct, whether he thinks it mattered or not, for this child it, was severe sexual abuse. It has left her suffering the effect of trauma. It has left her afraid. She was afraid when she spoke to her mom, who did not protect her. She was afraid when she told her mom, who then let the father back in. She was afraid when the father was back in the house.

> "Clearly, [An.V.B.]'s circumstance demonstrates that this was severe sexual abuse."

For those reasons, the juvenile court found both father's and mother's conduct constituted severe sexual abuse within the meaning of section 361.5, subdivision (b)(6). The court went on to analyze whether the children would benefit from reunification services. In analyzing the section 361.5, subdivision (i) factors, the court found it would not benefit the children to pursue reunification services with father. The court further

found it was prohibited from ordering reunification services to father because it could not find by clear and convincing evidence it would be in the children's best interests to reunify with father. As for mother, the court considered that mother and father no longer lived together, as well as the totality of the evidence, and found that reunification services should be ordered for mother.

The juvenile court adjudged the children dependents of the court and ordered them removed from both parents' custody. The court found visitation between An.V.B. and father would be detrimental to her and ordered no contact or visitation pending further order. The court ordered weekly therapeutic supervised visits between father and Al.V.B. Mother was ordered to participate in parenting classes, domestic violence services, and mental health services. The court ordered father be denied services pursuant to section 361.5, subdivision (b)(6).

## DISCUSSION

Appellant's first and primary contention is that hand-to-breast contact cannot qualify as "severe sexual abuse" under section 361.5, subdivision (b)(6) as a matter of law. We do not reach the question of whether hand-to-breast contact can *never* qualify as "severe sexual abuse" within the meaning of the statute, as it is not necessary to resolve father's claim, but we agree with father that substantial evidence did not support the juvenile court's finding that the acts here rose to the level of "severe sexual abuse" as defined in section 361.5, subdivision (b)(6)(B).

"We review questions of statutory construction de novo." (*In re B.H.* (2016) 243 Cal.App.4th 729, 736.) Our role is to "ascertain the intent of the Legislature so as to effectuate the purpose of the law." (*Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1040.) We first look to the words of the statute "to determine legislative intent and to fulfill the purpose of the law." (*In re B.H.*, at p. 736.) " 'If the statutory language is unambiguous, we presume the Legislature meant what it said, and the plain meaning of the statute controls.' " (*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1214.) We

12.

also "interpret the language in the context of the entire statute and the overarching statutory scheme, and we give significance to every word, phrase, sentence and part of an act in discerning the legislative purpose." (*In re B.H.*, at p. 736.) "We must also give the statute a reasonable and commonsense interpretation consistent with the apparent purpose and intent of the lawmakers and resulting in wise policy rather than mischief or absurdity." (*Ibid.*) "[I]f the statutory language may reasonably be given more than one interpretation, courts may employ various extrinsic aids, including a consideration of the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute." (*Conservatorship of Whitley*, at p. 845.)

Here, the plain language of the statute indicates that the juvenile court may base a finding of severe sexual abuse on, "but is not limited to," various specified acts. The phrase "including, but not limited to" is a phrase of enlargement, though "the use of this phrase does not conclusively demonstrate that the Legislature intended a category to be without limits." (*People v. Giordano* (2007) 42 Cal.4th 644, 660.) "In construing expansive general language in a statute, we apply the principle that where a particular class of things modifies general words, we construe those general words to apply only to things of the same general nature or class as the enumerated items." (*In re Marriage of Mullonkal & Kodiyamplakkil* (2020) 51 Cal.App.5th 604, 614; see *People v. Arias* (2008) 45 Cal.4th 169, 180.) Applying these principles, we conclude the juvenile court may determine an act not listed in the statute constitutes severe sexual abuse, though the Legislature's choice to define the term "severe sexual abuse" with specific acts indicates to us the Legislature intended the list to be exemplary of the type of conduct that is to be considered "severe" for the purposes of the statute. Thus, for an act to be considered "severe" within the meaning of the statute, it must be of the same nature and class as the enumerated conduct.

In so concluding, we reject the department's broad contention that "when an act of sexual touching is 'sexual abuse' within section 300(d), a juvenile court must have the

13.

option of finding that that same act is 'severe' within section 361.5(b)(6)." Respondent has not supported such an assertion with any authority or canon of statutory construction. In our view, such an interpretation is patently undermined by the plain language of the statute which uses the term "severe sexual abuse" rather than "sexual abuse" and lists specific acts, which we conclude to be exemplary of the type of acts which qualify as "severe" for the purposes of the statute. Similarly, as we have stated, we also decline to hold, as appellant asks us to, that hand-to-breast contact can *never* constitute severe sexual abuse within the meaning of the statute. We turn instead to whether, under the facts and circumstances of the present case and the conclusions we have set forth here, the trial court's finding that the acts of sexual abuse in the present case is supported by substantial evidence. (See *Jennifer S. v. Superior Court* (2017) 15 Cal.App.5th 1113, 1121–1122.)[2]

We conclude the juvenile court's finding that An.V.B. suffered "severe sexual abuse" within the meaning of section 361.5, subdivision (b)(6) was not supported by substantial evidence. While the act here, hand-to-breast touching under the clothes, was disturbing and clearly had a negative effect on An.V.B., we cannot say it was of the same nature and character as acts like engaging in penetration or genital/anal stimulation with

---

[2]    The department contends an abuse of discretion standard of review applies, citing *Jose O. v. Superior Court* (2008) 169 Cal.App.4th 703. This case does not support the department's assertion. The court in *Jose O.* applied a substantial evidence standard of review as to the trial court's factual findings that severe physical harm was inflicted upon a child and that reunification services would not benefit the child, consistent with other case law on the issue. (*Id*. at p. 707–708.) After a court has determined a bypass provision applies, its final determination—whether services are nonetheless in the best interest of the child under section 361.5, subdivision (c)—is reviewed for abuse of discretion. (*Jose O.*, at p. 708; see *In re A.E.* (2019) 38 Cal.App.5th 1124, 1140–1141.) Because we conclude the court's factual finding that the acts constituted severe sexual abuse was not supported by substantial evidence, we do not reach the question of whether the juvenile court abused its discretion in determining reunification services were not in the best interest of the children.

the child, or giving consent to another person or animal to engage in sexual acts with the child (see § 361.5, subd. (b)(6)(B), so as to raise the presumption that reunification services would be fruitless for father. The nature and class of the enumerated acts are the most invasive and perverse types of sexual offenses toward children. Here, the two incidents happened close in time, appeared to be isolated, and lasted for a few minutes. There is no evidence father said anything to An.V.B. during the incident, touched her anywhere else with any other part of his body, or used the act to exploit her for the pleasure of others.

We in no way intend to minimize father's behavior. All violations of children are reprehensible. The Legislature, however, has chosen to limit the perpetrators who are eligible for bypass of reunification services only to those who commit "severe sexual abuse," as opposed to any "sexual abuse," and, for the reasons we have stated, we conclude the acts here do not meet the threshold of "severe" as intended by the Legislature.

We are not persuaded by the department's arguments to the contrary. The department, in arguing that the sexual abuse was "severe" within the meaning of the statute, first notes father's conduct resulted in a criminal conviction and a criminal protective order restraining him from having contact with An.V.B. This fact does not support the department's position. "Sexual abuse" that brings a child within the juvenile court's jurisdiction under section 300 subdivision (d) describes criminal acts,[3] so any time a child comes within the juvenile court's jurisdiction due to sexual abuse, the perpetrator will have engaged in criminal conduct. Thus, the fact that the conduct here resulted in a criminal conviction is not particularly significant to the question of whether the abuse was "severe." Rather, the fact that the conviction was a misdemeanor with a

---

[3]    "Sexual abuse" in section 300, subdivision (d) is "as defined in Section 11165.1 of the Penal Code." Section 11165.1 defines "sexual abuse" as conduct in violation of a number of Penal Code sections.

15.

probation sentence as opposed to a felony conviction with or without a prison sentence, tends to show the abuse here was *not* severe in the context of the full gamut of sexual crimes. Further, while the criminal protective order may have a practical effect on father's potential reunification with An.V.B., it does not constitute evidence supporting a finding of "severe sexual abuse" within the meaning of section 361.5, subdivision (b)(6).[4]

The department further argues the juvenile court's finding was supported by the facts that the touching occurred under An.V.B.'s clothes, father had a drinking and substance abuse problem, and the abuse traumatized An.V.B. None of these factors persuade us to reach a contrary conclusion. First, the fact that the touching occurred under the clothes, while relevant, still does not raise the abuse to the level of the enumerated conduct listed in the statute in considering the totality of the evidence. As to father's drinking and substance abuse and the effect of the abuse on An.V.B, these factors do not constitute substantial evidence in support of the court's finding that the abuse was "severe" within the meaning of the statute. To explain, we must engage in further statutory analysis.

As we have stated, there are two prongs of the factual findings that make up the bypass provision set forth in section 361.5, subdivision (b)(6): (1) that the child came within the court's jurisdiction due to "severe sexual abuse" and (2) that reunification services would not benefit the child. The statute defines "severe sexual abuse" in section 361.5, subdivision (b)(6)(B), which gives the exemplary list of the type of physical acts or omissions that constitutes "severe sexual abuse." In a separate

---

**4** We note Al.V.B. is not a protected party listed in the protective order, and there is no indication on this record that appellant could not seek an order modifying the protective order to allow peaceful contact within the context of a reunification plan as father worked through his services. We express no opinion on whether father would be successful in such an attempt; our only task here is to review the juvenile court's finding that the acts constituted "severe sexual abuse" for the purpose of section 361.5, subdivision (b)(6).

subdivision—section 361.5, subdivision (i)—it sets forth the factors that should be considered in determining the second prong; these factors include broader considerations like the "circumstances" of the abuse and "[t]he severity of the emotional trauma suffered by the child," *in addition to* "[t]he specific act or omission comprising the severe sexual abuse." (§ 361.5, subd. (i).) In determining the Legislature's intent in what factors may be considered for each prong of the bypass provision, we conclude, based on the language and structure of the statute, that the juvenile court is to separately determine each prong, and as to the first prong, it is limited to considering the attributes of the physical act or acts or omissions that comprise the sexual abuse in a given case, and, in determining the second prong, it is to consider the broader factors like those enumerated in section 361.5, subdivision (i). The Legislature could have specified that the section 361.5, subdivision (i) factors could be used to determine whether sexual abuse is "severe," but did not. As such, factors such as the circumstances surrounding the abuse, such as father's drug or alcohol use, or the severity of the emotional trauma suffered by An.V.B., while relevant to the determination of the second prong, do not constitute substantial evidence supporting the first prong of the bypass provision.

Because substantial evidence does not support the juvenile court's determination that the acts here constituted "severe sexual abuse" within the meaning of section 361.5, subdivision (b)(6), we conclude the court erred by finding the bypass provision applied.

## DISPOSITION

The juvenile court's December 19, 2022 dispositional orders are reversed only to the extent they denied father reunification services pursuant to section 361.5, subdivision (b)(6). The matter is remanded with directions to the juvenile court to vacate its order denying reunification services to father. In the absence of other circumstances that would permit or require the court to deny father reunification services, the juvenile court is directed to provide father with appropriate reunification services tailored as

17.

necessary and appropriate to address the circumstances that led to the removal of the children.  The dispositional orders are otherwise affirmed.


                                                  DE SANTOS, J.

WE CONCUR:


LEVY, Acting P. J.


POOCHIGIAN, J.

18.